A-533-502<br>
Remand<br>
Court No. 21-00169<br>
POR:  05/01/2018 – 04/30/2019<br>
**Public Document**<br>
E&C/OI:  DV

*Garg Tube Export LLP and Garg Tube Limited v. United States*
Court No. 21-00169 (CIT February 3, 2023)
Welded Carbon Steel Standard Pipes and Tubes from India

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.      SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or the Court) in *Garg Tube Export LLP and Garg Tube Limited v. United States*, Court No. 21-00169 (CIT February 3, 2023) (*Remand Order*).  These final results of redetermination concern the 2018-2019 administrative review of the antidumping duty order on welded carbon steel standard pipes and tubes (pipe and tube) from India, in which Commerce made a cost-based particular market situation (PMS) adjustment in calculating the weighted-average dumping margin for Garg Tube Export LLP and its affiliate Garg Tube Limited (Garg Tube).[1]

In the *Remand Order*, the Court granted Commerce's request for a voluntary remand to recalculate Garg Tube's weighted-average dumping margin without making a cost-based PMS adjustment.[2]

---

[1] *See Welded Carbon Steel Standard Pipes and Tubes from India:  Final Results of Antidumping Duty Administrative Review; 2018-2019*, 86 FR 14872 (March 19, 2021) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Remand Order* at 1; *see also* Commerce's February 2, 2023, consent motion for a voluntary remand at 3 (the CIT granted the motion without modification).

## II.   LEGAL FRAMEWORK

Section 504 of the Trade Preferences Extension Act of 2015 (TPEA) amended the Tariff Act of 1930, as amended (the Act) to provide Commerce with additional discretion when applying the PMS concept to determine normal value.[3] Specifically, in section 504 of the TPEA, Congress added the concept of PMS in the definition of the term "ordinary course of trade" under section 771(15) of the Act and to the types of sales and transactions that Commerce will consider outside the "ordinary course of trade," and thus, not usable in its dumping analysis.[4] Under section 771(15) of the Act, Commerce shall find "sales and transactions" to be "outside the ordinary course of trade" in situations in which it "determines that the particular market situation prevents a proper comparison with the export price or constructed export price."

In addition to adding the concept of "particular market situation" to the definition of the term "ordinary course of trade" in section 771(15) of the Act, section 504 of the TPEA added the concept of "particular market situation" to the definition of constructed value under section 773(e) of the Act.[5] Section 773(e) of the Act states that, "if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, the administering authority may use another calculation methodology under this subtitle or any other calculation methodology." Although the Act does not define "particular market situation," the SAA explains that, for example, a situation may exist "where there is government control over pricing to such an extent that home market prices cannot be considered competitively set" or where there are "differing

---

[3] *See Trade Preferences Extension Act of 2015*, Pub. L. No. 114-27, 129 Stat. 362, 385 (2015) (TPEA).
[4] *Id.*
[5] *Id.*

patterns of demand in the United States and the foreign market."[6]

At the time Commerce issued the *Final Results*, Commerce interpreted the amendments to sections 771(15) and 773(e) of the Act to be applicable for purposes of Commerce's sales-below-cost test under section 773(b)(3) of the Act.

### III.    BACKGROUND

In the *Final Results*, Commerce found that record evidence supported a finding that a PMS existed in India which distorted the costs of production of pipe and tube due to the totality of circumstances.[7]  Specifically, Commerce found that a PMS existed in India concerning the cost of hot-rolled coil (HRC) based on evidence regarding the collective impact on the Indian market of global steel overcapacity, the Government of India's (GOI) subsidization of HRC, and the GOI's finding that Indian imports of HRC were unfairly traded.[8]  Therefore, for the *Final Results*, Commerce calculated a PMS adjustment to Garg Tube's cost of production based on a regression analysis submitted by Nucor Tubular Products Inc.[9]

Shortly after Commerce published the *Final Results*, the U.S. Court of Appeals for the Federal Circuit (CAFC) held that "section {773 of the Act}, as amended by the TPEA, clearly indicates that Congress intended to limit PMS adjustments to calculations pursuant to the 'constructed value' and not to authorize Commerce to make such adjustments pursuant to the 'cost of production' subsection."[10]

---

[6] *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA), at 822.
[7] *See Final Results* IDM at Comment 1.
[8] *Id.*
[9] *Id.*
[10] *See Hyundai Steel Co., Ltd. v. United States*, 19 F.4th 1346, 1352 (Fed. Cir. 2021) (*Hyundai Steel*).

In response to Commerce's request for a remand to "recalculate the weighted-average dumping margin without making a cost-based PMS adjustment," the Court issued the *Remand Order* granting Commerce's request.[11]

## IV.   ANALYSIS

Pursuant to the CAFC's decision in *Hyundai Steel* referenced above, the CAFC held that the statute only permits the adjustment of the costs of production for a PMS when normal value is based on constructed value.  In this review, all U.S. sale prices reported by Garg Tube were compared to a normal value based on home market sale prices of identical or similar merchandise.[12]  As a result, it was not necessary to base normal value on constructed value under section 773(e) of the Act.  Accordingly, we are not making a PMS adjustment to the costs of production for these final results of redetermination and have recalculated Garg Tube's weighted-average dumping margin accordingly.[13]

## V.   INTERESTED PARTY COMMENTS

On February 13, 2023, Commerce issued its draft results of redetermination and provided interested parties an opportunity to comment on Commerce's analysis and redetermination.[14]  Commerce received comments from only Garg Tube.[15]  These comments

---

[11] *See Remand Order* at 1; *see also* Commerce's February 2, 2023, consent motion for a voluntary remand at 3 (the CIT granted the motion without modification).

[12] *See* Memorandum, "Administrative Review of the Antidumping Duty Order on Welded Carbon Steel Standard Pipes and Tubes from India:  Final Analysis Memorandum for Garg Tube Export LLP and Garg Tube Limited; 2018-2019," dated March 15, 2021, at the attached log for the margin calculation program at page 299.

[13] *See* Memorandum, "Welded Carbon Steel Standard Pipes and Tubes from India:  Draft Results of Redetermination Calculation Memorandum for Garg Tube Export LLP and Garg Tube Limited," dated February 13, 2023 (Draft Results Analysis Memorandum).

[14] *See* Draft Results of Redetermination Pursuant to Court Order, *Garg Tube Export LLP and Garg Tube Limited v. United States*, Court No. 21-00169, (CIT February 3, 2023), dated February 13, 2023 (Draft Redetermination).

[15] *See* Garg Tube's Letter, "Garg's Comments on Draft Remand, 2018-19 Administrative Review of the Antidumping Duty Order on Welded Carbon Steel Standard Pipes and Tubes from India," dated February 21, 2023 (Garg Tube's Comments on Draft Results of Redetermination).

are addressed below.  After considering Garg Tube's comments, we made no changes to our conclusions in the Draft Redetermination for these final results of redetermination.

*Garg Tube's Comments*

According to Garg Tube, the Draft Redetermination properly recalculated the weighted-average dumping margin for Garg Tube without making an adjustment for a cost-based PMS.[16] This recalculation complies with the CIT order authorizing the Draft Redetermination, as well as judicial precedent concerning PMS, including the CIT's ruling in favor of Garg Tube in the prior review, and the decision by the CAFC.[17]  Garg Tube also provides extensive arguments alleging that the differential pricing analysis, the results of which are summarized in the Draft Results Analysis Memorandum, was contrary to law and unsupported by the record evidence in the underlying administrative review.[18]  Additionally, Garg Tube argues that Commerce's reliance on the average-to-transaction methodology is contrary to record evidence and controlling precedent.[19]

**Commerce's Position:**  Commerce finds that Garg Tube's comments regarding the differential pricing analysis are outside the specific scope of the *Remand Order*.  In the *Remand Order*, the Court granted Commerce's request for a voluntary remand to recalculate Garg Tube's weighted-average dumping margin without making a cost-based PMS adjustment.[20]  In the Draft Results Analysis Memorandum, as a result of Commerce's recalculation of the weighted-average dumping margin for Garg Tube, Commerce merely presented, as part of its dumping analysis,

---

[16] *See* Garg Tube's Comments on Draft Results of Redetermination at 2 (citing *Garg Tube Export LLP v. United States*, 527 F. Supp. 3d 1362, 1369-71 (CIT 2021); and *Hyundai Steel*).
[17] *Id*.
[18] *Id*. at 2-10.
[19] *Id*.
[20] *See Remand Order* at 1; *see also* Commerce's February 2, 2023, consent motion for a voluntary remand at 3 (the CIT granted the motion without modification).

the results of the differential pricing analysis.[21]  As such, Commerce was simply communicating to outside parties that, as a result of its dumping analysis, Commerce intends to continue to apply the average-to-transaction method to all U.S. sales to calculate the weighted-average dumping margin for Garg Tube in these final results of redetermination.  Notably, for the *Final Results*, Commerce's differential pricing analysis was identical to the analysis presented in this remand (*i.e.*, 66.01 percent of the value of U.S. sales passed the Cohen's *d* test and Commerce applied the average-to-transaction method to all U.S. sales).  Nonetheless, Garg Tube did not raise this issue either in its administrative case brief before the agency or in its challenge to the *Final Results* before this Court, and this issue was not covered by the Court's *Remand Order*.  Accordingly, Garg Tube waived this argument by failing to raise the issue prior to the remand.[22]

## VI.    FINAL RESULTS OF REDETERMINATION

In accordance with the Court's *Remand Order*, Commerce has, as discussed above, revised certain aspects of its dumping analysis.  Based on these changes, Commerce determines that the following weighted-average dumping margin exists for the period of May 1, 2018, through April 30, 2019:

---

[21] *See* Draft Results Analysis Memorandum at 2 (unchanged for these final results of redetermination).
[22] *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) (Generally, "arguments not raised in the opening brief are waived."); *see also Yantai Xinke Steel Structure Co., Ltd. v. United States*, Court No. 10–00240, Slip Op. 14-38 (CIT April 9, 2014), at 18 (finding that the "plaintiff waived its claim {} by failing to raise it before the court prior to the remand.  Because plaintiff did not raise this issue until after remand, the court's instructions necessarily did not direct {Commerce} to reconsider {the issue}.").

| Company | Final Results Weighted-Average Dumping (percent) | Final Results of Redetermination Weighted-Average Dumping Margin (percent) |
|---|---|---|
| Garg Tube Export LLP and Garg Tube Limited | 13.90 | 8.42 |

3/16/2023

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
 for Enforcement and Compliance

7