**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| GARG TUBE EXPORT LLP and GARG TUBE LIMITED, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   Court No. 21-00169 |
| UNITED STATES, | )   Public Version ) |
| Defendant, | ) ) |
| and | ) ) |
| NUCOR TUBULAR PRODUCTS INC. and WHEATLAND TUBE, | ) ) ) |
| Defendant-Intervenors. | ) ) |

---

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

---

BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

BRISHAILAH BROWN
Attorneys
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

ROBERT R. KIEPURA
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-4436
Fax: (202) 353-0461
Email: Robert.Kiepura@usdoj.gov
*Attorneys for Defendant United States*

November 20, 2023

# <u>TABLE OF CONTENTS</u>

I.    Administrative Determination Under Review ................................................... 2

II.   Issues Presented For Review ........................................................................... 2

STATEMENT OF FACTS .......................................................................................... 2

I.    Requests For Administrative Reviews ............................................................ 2

II.   Preliminary Results ......................................................................................... 4

III.  Final Results .................................................................................................... 6

IV.  Remand ........................................................................................................... 7

SUMMARY OF THE ARGUMENT ........................................................................... 8

ARGUMENT ............................................................................................................. 9

I.    Standard Of Review ........................................................................................ 9

II.   Commerce Reasonably Applied Partial Adverse Facts In Calculating Garg Tube's Weighted Average Dumping Margin ............................................................. 11

       A.    Legal Framework ................................................................................. 11

       B.    Commerce's Application Of Partial AFA Is Supported By Substantial Evidence And Otherwise In Accordance With Law ............................... 13

              1.    This Court's Decision Concerning The Prior Review Is Not Controlling In This Case ............................................................... 14

              2.    Commerce's Analysis In This Review Is Reasonable And Should Be Sustained ..................................................................... 16

              3.    Garg Tube's Cited Cases Do Not Undermine Commerce's Determination ................................................................................. 23

III.  Garg Tube Failed To Exhaust Its Administrative Remedies Regarding Its Challenges To Commerce's Differential Pricing Methodology ........................................ 25

       A.    Legal Framework For Exhaustion ....................................................... 25

       B.    Garg Tube Did Not Challenge The Differential Pricing Methodology Prior To The Final Results ......................................................................... 27

i

**C.**     Even If The Court Finds That Garg Tube Exhausted Its Administrative
Remedies, Garg Tube Has Still Misinterpreted *Stupp III* ....................................31

CONCLUSION..................................................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABB, Inc. v. United States,*
  920 F.3d 811 (Fed. Cir. 2019) ............................................................... 26

*Atl. Sugar, Ltd. v. United States,*
  744 F.2d 1556 (Fed. Cir. 1984) ............................................................... 9

*Boomerang Tube LLC v. United States,*
  856 F.3d 908 (Fed. Cir. 2017) ............................................................... 25

*Canadian Solar Int'l Ltd. v. United States,*
  378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019) ................................... 20, 21

*Canadian Solar Int'l Ltd. v. United States,*
  415 F. Supp 3d 1325 (Ct. Int'l Trade 2019) ............................. 15, 17, 18

*Chevron, U.S.A. v. Natural Resources Defense Council,*
  467 U.S. 837 (1984) ........................................................................... 9, 10

*Clearon Corp. v. United States,*
  800 F. Supp. 2d 1355 (Ct. Int'l Trade 2011) ....................................... 26

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938) ............................................................................... 9

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966) ............................................................................... 9

*Corus Staal BV v. United States,*
  502 F.3d 1370 (Fed. Cir. 2007) ............................................. 25, 26, 29, 30

*Dillinger France S.A. v. United States,*
  350 F. Supp. 3d 1349 (Ct. Int'l Trade 2018) ....................................... 30

*Dorbest Ltd. v. United States,*
  604 F.3d 1363 (Fed. Cir. 2010) ............................................................. 25

*Fujitsu General, Ltd. v. United States,*
  88 F.3d 1034 (Fed. Cir. 1996) ............................................................... 10

*Garg Tube Export LLP v. United States,*
  527 F. Supp. 3d 1362 (Ct. Int'l Trade 2021) ................................... *passim*

*Gerber Food (Yunnan) Co. v. United States*,
  601 F. Supp. 2d 1370 (Ct. Int'l Trade 2009)........................................................................30

*Hormel v. Helvering*,
  312 U.S. 552 (1941) .................................................................................................................30

*Hyundai Steel Co., Ltd. v. United States*,
  19 F.4th 1346 (Fed. Cir. 2021)..................................................................................................7

*Itochu Bldg. Prods. v. United States*,
  630 F. Supp. 1317 (1986) ........................................................................................................28

*Itochu Bldg. Prods. v. United States*,
  733 F.3d 1140 (Fed. Cir. 2013)................................................................................... 27, 29, 30

*JBF RAK LLC v. United States*,
  790 F.3d 1358 (Fed. Cir. 2015)...............................................................................................10

*Luoyang Bearing Factor v. United States*,
  240 F. Supp. 2d 1268 (Ct. Int'l Trade 2002)..........................................................................28

*McCarthy v. Madigan*,
  503 U.S. 140 (1992) .................................................................................................................26

*Mid Continent Steel & Wire, Inc v. United States*,
  31 F.4th 1367 (Fed. Cir. 2022).................................................................................................31

*Mittal Steel Point Lisas Ltd. v. United States*,
  548 F.3d 1375 (Fed. Cir. 2008)..........................................................................................26, 27

*Mueller Comercial De Mexico v. United States*,
  753 F.3d 1227 (Fed. Cir. 2014) ........................................................................ 19, 20, 21, 22

*NEXTEEL Co. v. United States*,
  461 F. Supp. 3d 1336 (Ct. Int'l Trade 2020)..........................................................................28

*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 (Fed. Cir. 2003) .........................................................................................12, 13

*Nippon Steel Corp. v. United States*,
  458 F.3d 1345 (Fed. Cir. 2006).................................................................................................9

*Nucor Corp. v. United States*,
  286 F. Supp. 3d 1364 (Ct. Int'l Trade 2018)
  *aff'd* 927 F.3d 1243 (Fed. Cir. 2019) ....................................................................................26

*Pohang Iron & Steel Co. v. United States*,
  23 CIT 778 (Ct. Int'l Trade 1992)...........................................................................................27

*Prime Time Commerce LLC v. United States*,
    495 F. Supp. 3d 1308 (Ct. Int'l Trade 2021)...............................................................25

*Risen Energy Co. v. United States*,
    569 F. Supp. 3d 1315 (Ct. Int'l Trade 2022)...............................................................23

*Risen Energy Co., Ltd. v. United States*,
    611 F. Supp. 3d 1384 (Ct. Int'l Trade 2022)...............................................................23

*Samsung Electronics Co. Ltd., v. United States*,
    72 F. Supp. 3d 1359 (Ct. Int'l Trade 2015) ...............................................................31

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998)...................................................................................26

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006)..................................................................................11

*Stanley Works (Langfang) Fastening Systems Co. v. United States*,
    279 F. Supp. 3d 1172 (Ct. Int'l Trade 2021)................................................ 26, 29, 30

*Stupp Corporation v. United States*,
    5 F.4th 1341 (Fed. Cir. 2021)........................................................... 28, 29, 31, 32

*Stupp Corporation v. United States*,
    619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023)........................................................29, 32

*Ta Chen Stainless Steel Pipe, Ltd. v. United States*,
    342 F. Supp. 2d 1191 (Ct. Int'l Trade 2004)...............................................................26

*Timken Co. v. United States*,
    354 F.3d 1334 (Fed. Cir. 2004)..................................................................................10

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ..............................................................................................9, 10

*United States v. L.A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952) .....................................................................................................26

*U.S. Steel Grp. v. United States*,
    96 F.3d 1352 (Fed. Cir. 1996)....................................................................................10

*Venus Wire Industries Pvt. Ltd v. United States*,
    471 F. Supp. 3d 1289 (Ct. Int'l Trade 2020)...............................................................24

*Wheatland Tube Co. v. United States*,
    161 F.3d 1365 (Fed. Cir. 1998)..................................................................................20

*Zhongce Rubber Group Co. Ltd., v. United States,*
    352 F. Supp. 3d 1276 (Ct. Int'l Trade 2018)..........................................................................30

**Statutes**

19 U.S.C. § 1516a(b)(1)(B).................................................................................................9

19 U.S.C. § 1516a(b)(2)(A)...............................................................................................29

19 U.S.C. § 1677(9)(A).......................................................................................................3

19 U.S.C. § 1677b(b)(1)....................................................................................................11

19 U.S.C. § 1677b(c)(1)....................................................................................................11

19 U.S.C. § 1677b(f)(1)(A)...............................................................................................12

19 U.S.C. § 1677e(a).....................................................................................................*passim*

19 U.S.C. § 1677e(b).....................................................................................................*passim*

19 U.S.C. § 1677m(d).......................................................................................................13

28 U.S.C. § 2637(d)..........................................................................................................25

**Regulations**

19 C.F.R. 351.309 ................................................................................... 26, 28, 30, 31

**Administrative Decisions**

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation;*
*Opportunity To Request Administrative Review,*
    84 Fed. Reg. 18,479 (Dep't of Commerce May 1, 2019)....................................2, 3

Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty
Administrative Review; 2017-2018,
    85 Fed. Reg. 2,715 (Dep't of Commerce January 16, 2020)....................................1

Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Results of Antidumping
Duty Administrative Review; 2018-2019,
    85 Fed. Reg. 44,860 (July 24, 2020) ...................................................................4

Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty
Administrative Review; 2018-2019,
    86 Fed. Reg. 14,872 (Dep't of Commerce March 19, 2021).................................2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| GARG TUBE EXPORT LLP and GARG TUBE LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 21-00169 Public Version |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| NUCOR TUBULAR PRODUCTS INC. and WHEATLAND TUBE, | ) ) ) | |
| Defendant-Intervenors. | ) ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade

(USCIT R.), defendant, the United States, respectfully responds to the motion for judgment on

the agency record filed by plaintiffs, Garg Tube Export LLP and its affiliate, Garg Tube Limited

(collectively, Garg Tube) [1], challenging aspects of the United States Department of Commerce's

---

[1] In the previous administrative review, Commerce determined that it was appropriate to collapse the two companies into one entity.  Accordingly, Garg Tube Export LLP and Garg Tube Limited were treated as a single entity for the purposes of this administrative review.  *See Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 2,715 (Dep't of Commerce January 16, 2020) unchanged in *Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty Administrative Review; 2018-2019*, 86 Fed. Reg. 14,872 (Dep't of Commerce March 19, 2021).

final results in the antidumping duty administrative review of welded carbon steel standard pipes and tubes from India.  As explained below, the motion should be denied because the final results are supported by substantial evidence and are otherwise in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

### I.   Administrative Determination Under Review

The administrative determination under review is the final results of the 2018-2019 administrative review of the antidumping duty order on welded carbon steel standard pipes and tubes (pipe and tube) from India.  *See Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty Administrative Review; 2018-2019*, 86 Fed. Reg. 14,872 (Dep't of Commerce March 19, 2021) (Final Results), (P.R. 234), and the accompanying Issues and Decision Memorandum (IDM), (P.R. 235). The period of review is May 1, 2018, through April 30, 2019.

### II.   Issues Presented For Review

1.      Whether Commerce's use of an adverse inference when relying on the facts otherwise available on the record for determinations relating to missing production cost information for certain of Garg Tube's unaffiliated suppliers is supported by substantial evidence on the record and in accordance with law; and

2.      Whether Garg Tube failed to exhaust its administrative remedies with regard to arguments concerning Commerce's application of its differential pricing methodology.

## STATEMENT OF FACTS

### V.   Requests For Administrative Reviews

On May 1, 2019, Commerce published in the *Federal Register* a notice of opportunity to

request an administrative review of an antidumping order covering certain welded pipe and tube from India. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 84 Fed. Reg. 18,479 (Dep't of Commerce May 1, 2019) . On July 15, 2019, Commerce initiated an administrative review of 29 companies covering the period May 1, 2018, to April 30, 2019. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 83 Fed. Reg. 33,739 (Dep't of Commerce July 15, 2019) (*Initiation Notice*) (P.R. 12). On December 31, 2019, Commerce rescinded the administrative review with respect to 28 companies after receiving timely withdrawal requests. *Welded Carbon Steel Standard Pipes and Tubes from India: Rescission of Antidumping Duty Administrative Review, in Part; 2018-2019*, 84 Fed. Reg. 72,298 (Dep't of Commerce December 31, 2019) (P.R. 101). Garg Tube remained in this administrative review as the sole respondent.

In the administrative review, Garg Tube reported that its unaffiliated suppliers did not have knowledge of the ultimate destination of the pipe and tube that they sold to Garg Tube. *See* Garg Tube's Section A Questionnaire Response (Oct. 10, 2019) at 38. Of note, in situations where a respondent purchases the merchandise under consideration from an unaffiliated producer, Commerce may exclude sales information from the U.S. database if: (1) the producer knew or should have known that the merchandise is going to the United States, and (2) the sales of the merchandise can be identified as to the original manufacturer. PDM at 9. The statute requires that Commerce obtain cost of production information from unaffiliated suppliers of in-scope merchandise because they are producers of the foreign like product and subject merchandise. *See id.* (citing 19 U.S.C. § 1677(9)(A)).

Therefore, on December 19, 2019, Commerce requested that Garg Tube obtain cost of

production information from certain unaffiliated suppliers, [                    ], [

], and [          ].  *See* Letter from Commerce to Garg Tube (December 19, 2019) (P.R. 94)

(C.R .47).  Commerce also issued direct requests to these suppliers to provide information

concerning the merchandise sold to Garg Tube.  *See* re: Letter from Commerce to Garg Tube's

Suppliers Requesting Costs (May 5, 2020) (P.R. 136-138) (C.R. 63-65).  Despite requests from

both Commerce and Garg Tube, Garg Tube's suppliers refused to provide cost of production

information.  PDM at 10.

On October 10, 2019, Garg Tube submitted a timely section A questionnaire response.

Garg Tube's Section A Questionnaire Response (October 10, 2019) (Section A Response) (P.R.

38-41) (C.R. 7-9).  On November 12, 2019, Garg Tube submitted its sections B, C, and D

responses.   Garg Tube's Section B, C, and D Original Response (November 12, 2019) (Section

B Response, Section C Response, and Section D Response, respectively) (P.R. 56-57) (C.R. 12-

13).  Garg Tube submitted its first supplemental response on January 23, 2020, second

supplemental response in two parts on June 9, 2020, and June 16, 2020, and third supplemental

response on July 2, 2020.  Garg Tube's First Supplemental Response (January 23, 2020); Garg

Tube's Second Supplemental Response Part 1 (June 9, 2020); Garg Tube's Second Supplemental

Response Part 2 (June 16, 2020); and Garg Tube's Third Supplemental Response (June 9, 2020)

(P.R. 119-122) (C.R. 87-99).

**VI.    Preliminary Results**

On July 24, 2020, Commerce published the preliminary results of this administrative

review and invited interested parties to comment.  *See Welded Carbon Steel Standard Pipes and*

*Tubes from India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019,*

85 Fed. Reg. 44,860 (July 24, 2020) (Preliminary Results) (P.R. 202), and accompanying

Preliminary Decision Memorandum (PDM) at 8 (P.R. 193).

In the preliminary results, Commerce used factual information from various

questionnaire responses to determine a weighted average dumping margin for Garg Tube.  *See*

PDM at 22.  Regarding Garg Tube's unaffiliated suppliers from which cost information was

requested and not received, Commerce determined that it was necessary to rely upon facts

otherwise available as a substitute for the missing information.  In particular, Commerce found

that each of the suppliers withheld cost information that was requested by Commerce, failed to

provide such information within Commerce's deadline, and significantly impeded the review.

*See* PDM at 10 (citing 19 U.S.C. § 1677e(a)(2)(A)-(C)).  Further, Commerce determined that the

unaffiliated suppliers failed to cooperate by not acting to the best of their abilities in complying

with Commerce's separate and repeated requests for information and that it was appropriate to

resort to partial facts available with adverse inferences.  *Id.* (citing 19 U.S.C. § 1677e(b)).

Commerce therefore resorted to using an adverse inference when relying on facts otherwise

available on the record (applying AFA) to determine cost information for pipe and tube that Garg

Tube sourced from unaffiliated suppliers.  *Id.*  Specifically, Commerce used the production cost

data for the product control number with the highest calculated cost of production in place of the

missing cost data.  *Id.*

Commerce distinguished its methodology from that applied in the preceding review, in

which Commerce relied on the acquisition costs for the supplier-produced pipes and tubes plus

amounts for Garg Tube's further processing expenses, general and administrative expenses, and

financial expenses, adjusted based on Garg Tube's home market sale on which it realized the

largest loss.  *See id.*  Commerce explained that such a change was warranted because

uncooperative suppliers continued not to cooperate and the new methodology "potentially induces the cooperation of Garg Tube's suppliers in future segments of this proceeding, if any, and induces Garg Tube in future segments to source from producers of subject merchandise that will cooperate in these proceedings by providing necessary information to Commerce." *Id.* at 11.

Also, in the preliminary results, Commerce found that a particular market situation (PMS) existed in India affecting the material costs for hot-rolled coil, an input of pipe and tube, but Commerce also found there was insufficient information on the record to quantify an adjustment to Garg Tube's reported cost of production data for the cost-based PMS for hot-rolled coil in the Indian market during the period of review. *See* PDM at 14-15.

## VII.   Final Results

In the final results, Commerce continued to find that the application of AFA was necessary in order to calculate the unaffiliated suppliers' missing cost information, making no change to the information it used in the preliminary results. IDM at 32-43. In addressing interested party comments, Commerce stated that Garg Tube "did not act to the best of its ability in attempting to obtain the suppliers' costs" because its efforts "did not serve as a strong inducement for the suppliers in question to cooperate." *Id.* at 41. Commerce continued to find that it was necessary to apply partial AFA—utilizing a distinct methodology—in this review. *Id.* at 41-42. Commerce stated that the methodology used in the review was sufficiently adverse to Garg Tube's interests, given that Garg Tube continued to source pipe and tube from suppliers who refuse to cooperate with Commerce's requests for actual cost of production (COP) information, but that Garg had repeatedly failed to induce cooperation from each of the suppliers from which Commerce sought this information. *See id.* at 42. Also, in the final results,

Commerce re-evaluated the record and made a cost-based particular market situation adjustment in calculating the weighted-average dumping margin for Garg Tube. *Id*. at 19-23.

## VIII.   __Remand__

After Commerce published the final results, the U.S. Court of Appeals for the Federal Circuit held that "section {773 of the Act}, as amended by the TPEA, indicates that Congress intended to limit PMS adjustments to calculations pursuant to the 'constructed value' and not to authorize Commerce to make such adjustments pursuant to the 'cost of production' subsection." *See Hyundai Steel Co., Ltd. v. United States*, 19 F.4th 1346, 1352 (Fed. Cir. 2021) (*Hyundai Steel*).  In recognizing the impact of *Hyundai Steel* on the final results, the United States requested a remand on February 2, 2023, so that Commerce could recalculate Garg Tube's weighted-average dumping margin.  On February 3, 2023, the Court granted the Government's request for a voluntary remand to recalculate Garg Tube's weighted-average dumping margin without making a cost-based PMS adjustment.  Order, ECF No. 40 (*Remand Order*).

On February 13, 2023, Commerce issued its draft results of redetermination and provided interested parties an opportunity to comment on Commerce's analysis and redetermination.  *See* Final Results of Redetermination Pursuant to Court Remand, ECF No. 42-2 at 4 (Remand Results).  On February 21, 2023, Garg Tube commented on Commerce's Draft Redetermination. *See* Garg Tube's Letter, "Garg's Comments on Draft Remand, 2018-19 Administrative Review of the antidumping Duty Order on Welded Carbon Steel Standard Pipes and Tubes from India," (February 21, 2023), P.R.R. 3 (Garg Tube's Comments on Draft Results of Redetermination).  In its comments on the draft results, Garg Tube suggested that Commerce properly recalculated the weighted average dumping margin for Garg Tube without making an adjustment for a cost-based

PMS.  *See* Garg Tube's Comments on Draft Results of Redetermination at 2 (citing *Garg Tube Export LLP v. United States*, 527 F. Supp. 3d 1362, 1369-71 (Ct. Int'l Trade 2021); and *Hyundai Steel*, 19 F.4th 1346 (Fed. Cir. 2021).  However, Garg Tube argued for the first time that Commerce's use of the differential pricing methodology is contrary to law and unsupported by record evidence because Garg Tube's U.S. sales database did not satisfy the prerequisite conditions required to apply the Cohen's *d* test.  *See* Garg Tube's Comments on Draft Results of Redetermination at 2-3.

Commerce issued its Remand Redetermination on March 16, 2023.  *See* Remand Results, ECF No. 42-2.  In its Remand Results, Commerce concluded that Garg Tube's comments regarding the differential pricing analysis are outside the specific scope of the *Remand Order* because Commerce's recalculation of Garg Tube's dumping margin did not change Commerce's differential pricing analysis and that Garg Tube waived its arguments concerning differential pricing by failing to raise the arguments in its administrative case brief before the final results. *See* Remand Results at 5-6.

## SUMMARY OF THE ARGUMENT

First, Commerce's use of an adverse inference in relying on the facts otherwise available with respect to the missing cost of production information for Garg Tube's unaffiliated supplier is reasonable.  Commerce reasonably found that reliance on facts available was warranted because necessary cost information was missing from the record, that the unaffiliated supplier failed to act to the best of its ability in providing this information, and that Garg Tube also failed to act to the best of its ability in continuing to source pipe and tube from a supplier who refuses to cooperate and repeatedly fails to induce its supplier's cooperation.  Therefore, Commerce's application of partial AFA is supported by substantial evidence and in accordance with law.

Second, Garg Tube failed to exhaust its administrative remedies regarding Commerce's

application of its differential pricing methodology because the administrative case briefs that it

submitted to Commerce contained no arguments regarding differential pricing or the Cohen's *d*

test.  Also, none of the exceptions to the exhaustion requirement apply.  Therefore, this Court

should decline to consider these arguments because they were not raised before Commerce.

Finally, even if this Court determines that Garg Tube did exhaust its administrative remedies on

this point, the Court should nevertheless reject those arguments because Garg Tube has

misunderstood the relevant caselaw.

## **ARGUMENT**

### IV.  **Standard Of Review**

This Court sustains any determination, finding, or conclusion by Commerce unless it is

unsupported by substantial evidence upon the record, or otherwise not in accordance with law.

19 U.S.C. § 1516a(b)(1)(B); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).

"Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Substantial evidence may also be "less than the weight of the evidence," and the possibility of

drawing inconsistent conclusions from evidence upon the record does not render Commerce's

findings unsupported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620

(1966).  Thus, a party challenging Commerce's determination under the substantial evidence

standard "has chosen a course with a high barrier to reversal."  *Nippon Steel Corp. v. United

States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation and internal quotation marks omitted), and

the Court sustains Commerce's factual determinations as long as they are reasonable and

supported by the record, even if some evidence detracts from the agency's conclusions.  *Atl.*

*Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

When the Court examines the lawfulness of Commerce's statutory interpretations, it employs the two-pronged test established in *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984).  The Court first examines "whether Congress has directly spoken to the precise question at issue," and, if it has, the agency must comply with Congress's clear intent.  *Id.* at 842-43.  If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Id.* at 843.  In such cases, "{a}ny reasonable construction of the statute is a permissible construction," *Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004) (citation and quotation marks omitted), and Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous."  *Eurodif*, 555 U.S. at 316 (citation omitted).  The Court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."  *Chevron*, 467 U.S. at 843 n.11.  Indeed, "the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency."  *Eurodif*, 555 U.S. at 316 (citation and quotation marks omitted).

Finally, this Court affords Commerce an especially great deal of deference "when a statute fails to make clear 'any Congressionally mandated procedure or methodology for assessment of the statutory tests.'"  *JBF RAK LLC v. United States*, 790 F.3d 1358, 1363 (Fed. Cir. 2015) (quoting *U.S. Steel Grp.  v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996)).  In that circumstance, "Commerce 'may perform its duties in the way it believes most suitable.'"  *Id.* (quoting *U.S. Steel Grp.*, 96 F.3d at 1362).  Consequently, Commerce receives "tremendous

deference" that is "both greater than and distinct from that accorded the agency in interpreting the statutes it administers" when it exercises its technical expertise to select and apply methodologies to implement the dictates of the trade statute.  *Fujitsu General, Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996).

## V.    Commerce Reasonably Applied Partial Adverse Facts In Calculating Garg Tube's Weighted Average Dumping Margin

Commerce lawfully relied on facts available pursuant to 19 U.S.C. § 1677e(a) because Commerce found that each of the unaffiliated suppliers from which cost data was requested withheld necessary information from Commerce, failed to provide such information by the specified deadline, and significantly impeded the review.  Commerce's Letter to Garg Tube, dated December 19, 2019, at 12-13; and Commerce's Letters, Supplier Questionnaires, both dated May 5, 2020 (P.R. 136-138; C.R. 63-65).  Commerce also appropriately applied an adverse inference pursuant to 19 U.S.C. § 1677e(b) upon finding that Garg Tube's suppliers and Garg Tube itself failed to cooperate to the best of their abilities in the review.  PDM at 10; IDM at 41. Garg Tube's arguments to the contrary lack merit.[2]

### A.    Legal Framework

When used for normal value, constructed value is calculated based on "cost of materials and fabrication or other processing of any kind employed in producing the merchandise."  19 U.S.C. § 1677b(c)(1).  Where Commerce has "reasonable grounds to believe or suspect that sales of the foreign like product under consideration for determination of normal value have been

---

[2] Garg Tube challenges Commerce's treatment of one unaffiliated supplier, [     ]. Therefore, our response here focuses on [     ] and this Court should consider Garg Tube to have waived any challenges with respect to other suppliers.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("{A}rguments not raised in the opening brief are waived.").

made at prices which represent less than the cost of production of that product, {Commerce}

shall determine whether, in fact the sales were made at less than the cost of production."  19

U.S.C. § 1677b(b)(1).  In accordance with the statute, Commerce requests cost of production,

information necessary to calculate constructed value and cost of production to make such a

determination.  19 U.S.C. § 1677b(b)(2)(A)(ii).  The statute directs that "{c}osts shall normally

be calculated based on the records of the exporter or producer of the merchandise, if such records

are kept in accordance with the generally accepted accounting principles."  19 U.S.C.

§ 1677b(f)(1)(A).

 Commerce will use "facts otherwise available" to fill gaps in the record if (1) necessary

information is not available or (2) an interested party withholds information requested by

Commerce, fails to provide the information by the deadline or in the manner requested,

significantly impedes the proceedings or provides information that cannot be verified.  19

U.S.C. § 1677e(a).  If Commerce finds that a respondent failed to cooperate by not acting "to the

best of its ability to comply with a request for information," it may apply an adverse inference in

its selection of facts otherwise available.  19 U.S.C. § 1677e(b).  Indeed, Commerce may apply

an adverse inference for a respondent's "failure to cooperate to the best of respondent's ability,

regardless of motivation or intent."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382

(Fed. Cir. 2003).  A respondent fails to act to the best of its ability when it does not exert

"maximum effort to provide Commerce with full and complete answers to all inquiries in an

investigation."  *Id*.  Further, the standard requires that importers "conduct prompt, careful and

comprehensive investigations of all relevant records that refer or relate to the imports in question

to the full extent of the importers' ability to do so." *Id*.

 In selecting an adverse facts available rate, Commerce may rely on information from (1)

the petition, (2) the final determination in the investigation, (3) any previous administrative review, or (4) any other information placed on the record. *See* 19 U.S.C. § 1677e(b); 19 C.F.R. § 351.308(c). The SAA explains that the purpose of the adverse facts available provision is "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol. 1 (1994) (SAA), at 870 (1994), as reprinted in 1994 U.S.C.C.A.N. 4040, 4199. When applying an adverse inference, Commerce also considers the extent to which a party may benefit from its own lack of cooperation. *See Nippon Steel*, 337 F.3d at 1382-83.

Before Commerce may apply adverse facts available due to the submission of deficient or incomplete information, the antidumping statute provides that Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency{.}" 19 U.S.C. § 1677m(d).

### B. Commerce's Application Of Partial AFA Is Supported By Substantial Evidence And Otherwise In Accordance With Law

Commerce reasonably applied partial AFA because it determined that [      ] failed to cooperate to the best of its ability in responding to Commerce's requests for information by not providing Commerce with the cost information that Commerce requires to calculate Garg Tube's dumping margin. *See* IDM at 37. In particular, Commerce found that [     ] – who as a foreign manufacturer of subject merchandise constitutes an interested party in the proceeding – withheld requested information, failed to provide requested information in a timely manner, and

significantly impeded the proceeding pursuant to 19 U.S.C. 1677e(a).[3]  Commerce further found

that [     ] failed to cooperate to the best of its ability within the meaning of 19 U.S.C. 1677e(b)

by not responding to Commerce's "separate and repeated requests for information" and that Garg

Tube did not act to the best of its ability by continuing to source pipe and tube from suppliers

that refuse to cooperate with Commerce's requests for information and by failing to induce

[        ] to report its costs.  *See* IDM at 38, 41-42.  As partial AFA, Commerce used the

production cost data for the product control number with the highest calculated cost of

production to substitute for the missing cost information.  Commerce found that this

methodology was appropriate, because unlike in the 2017-2018 administrative review, "the

methodology . . . in this review is sufficiently adverse to Garg Tube's interests, given that Garg

Tube continues to source pipe and tube from suppliers who refuse to cooperate with Commerce's

requests for actual COP information."  *See id.* at 42.  As set forth below, Commerce's

determination is reasonable and should be sustained.

### 1. This Court's Decision Concerning The Prior Review Is Not Controlling In This Case

Garg Tube does not dispute that necessary information is missing from the record, or that

its supplier failed to act to the best of its ability in responding to Commerce's request for cost

information.  Garg Tube Br. at 18.  Instead, Garg Tube relies on this Court's opinion in the

preceding administrative review where Garg Tube's suppliers similarly refused to provide cost

information.  *See* Garg Tube Br. at 18-23 (citing *Garg Tube Export LLP v. United States*, 527 F.

Supp. 3d 1362 (Ct Int'l Trade 2021) (*Garg Tube I*)).  In that case, this Court remanded the final

---

[3] Specifically, Garg Tube's unaffiliated suppliers failed to act to the best of their abilities because they failed to respond to Commerce's multiple requests for cost information.  *See id.* at 37 (citing Commerce's Letter to Garg Tube (December 19, 2019) at 12-13(P.R. 94) (C.R .47); and Commerce's Letters, Supplier Questionnaires (May 5, 2020) (P.R. 136-138) (C.R. 63-65).

results for Commerce to clarify whether it was applying an adverse inference under 19 U.S.C.

§ 1677e(b) based on the non-cooperation of the unaffiliated supplier, Garg Tube, or both parties.

*Id*. (reasoning Commerce's final determination cannot be sustained if the court cannot discern

Commerce's analytical pathway).  The Court further held that, to the extent Commerce did not

apply an adverse inference based on Garg Tube's non-cooperation, Commerce needed to "do

more to support its determination."  In particular, the Court held that "{i}f Commerce seeks to

induce the cooperation of a non-cooperating supplier through a cooperating party, there must be,

for example, substantial evidence that the cooperating party has leverage over the non-

cooperating supplier, and that if Commerce is constrained from employing adverse inferences,

the non-cooperating party will have an incentive to evade duties by selling merchandise into the

United States through the cooperating party." *Garg Tube I* at 1372 (citing *Canadian Solar Int'l*

*Ltd. v. United States*, 415 F. Supp 3d 1325, 1334-35 (Ct. Int'l Trade 2019)).

On remand following *Garg Tube I*, Commerce under respectful protest reversed its

decision to rely on partial AFA as a substitute for the missing cost information.  In so doing,

Commerce clarified that it was not making an adverse inference based on Garg Tube's level of

cooperation (but rather with respect to the unaffiliated supplier's non-cooperation) and relied on

neutral facts available because it could not "demonstrate on the record of this review that Garg

Tube has sufficient 'market power' or 'leverage' over its unaffiliated supplier to induce the

supplier's cooperation."  *See* Public Final Results of Redetermination Pursuant to Court Remand,

*Garg Tube Export LLP et al v. United States*, No. 20-00026 (Ct. Int'l Trade Oct. 7, 2021), ECF

No. 74-1 at 3 (October 2021 Remand).[4]  In making this determination, Commerce explained

(among other things) that because this was "the first review where Commerce individually

---

[4] Available at https://access.trade.gov/resources/remands/21-83.pdf.

examined Garg Tube, we do not have the privilege of time in accumulating evidence of a 'long-term' relationship between Garg Tube and {its supplier} that potentially gives rise to leverage." *See id.* at 21. Commerce also clarified that its analysis "appli{ed} only to the record before Commerce in the 2017-18 review" and not the review that is the subject of this litigation. *See id.* at 17 n.56.

Notwithstanding that *Garg Tube I* involved a different review and a different factual record, Garg Tube asserts that "{t}here are no material differences between the factual and legal issues" at issue in the two reviews. Garg Tube Br. at 18. This is incorrect, as Commerce expressly found that such differences existed both in the underlying decision memorandum in this case and in its remand redetermination in the prior review. *See* October 2021 Remand at 17 n.56 (distinguishing the two reviews); IDM at 42 ("{I}n contrast to the methodology used in the last review to derive the AFA information, the methodology we used in this review is sufficiently adverse to Garg Tube's interests, given that Garg Tube continues to source pipe and tube from suppliers who refuse to cooperate with Commerce's requests for actual COP information . . . ."). Therefore, this Court should not accept Garg Tube's characterization of the records as materially indistinguishable such that Commerce could not reasonably reach a different determination on this record. *See* Garg Tube Br. at 26 (asking the Court to find (1) that Commerce's decision rests solely on the failure of Garg Tube's unaffiliated supplier to act to the best of its ability, and (2) that the record in this review "does not contain 'substantial evidence'" to support Commerce's partial AFA determination). Indeed, the records are sufficiently distinguishable such that a different outcome from the previous review is warranted.

**2. Commerce's Analysis In This Review Is Reasonable And Should Be Sustained**

Commerce's decision in this review is supported by substantial evidence and in accordance with law.  Garg Tube argues that Commerce's application of partial AFA when filling the gap caused by the unaffiliated supplier's missing information is not supported by the record and is contrary to this Court's precedent.  *See id*. at 19.  More specifically, Garg Tube argues that this Court has emphasized that it is unfair and contrary to law for Commerce to apply an adverse inference when the party has no control over the non-cooperating supplier.  *See id*. at 16.  Garg Tube further contends that it cooperated with Commerce's requests for information, and used its maximum market leverage to secure its unaffiliated suppliers' cooperation.  *Id.* Garg Tube asserts that it accomplished this by stating in its letters to the suppliers that, if they refused to provide cost of production data, Garg Tube would be forced to refuse to purchase any products from them and would only purchase from the companies that would cooperate with Garg Tube on this issue.  *See id*. at 27.  However, Garg Tube never followed through on any of these threats.

Commerce persuasively addressed these arguments in its final results.  After determining that necessary information was missing from the record, Commerce found that Garg Tube maintained sufficient control over [       ] because it sourced a substantial volume of pipe and tube for Garg Tube's export sales to the United States and there is no evidence that the supplier itself directly exported only a small volume of merchandise under consideration to the United States.  *See* IDM at 41; *see also* Memorandum dated July 19, 2019 (placing on the record U.S. Customs and Border Protection data on U.S. imports of pipe and tube during the period of review) P.R. 14-15; C.R. 1-2.  Commerce also considered Garg Tube's efforts to obtain the requested cost information from [       ] and found that Garg Tube failed to put forth its "maximum efforts" in inducing the company to cooperate.  IDM at 41.  Commerce found that

Garg Tube's communications only held out a general inference of a potential adverse effect on their business relationship—a threat that was essentially hollow because Garg Tube made similar threats in the prior review and yet continued to source from the same uncooperative supplier in this review.  *See* IDM at 42 (citing India Pipe and Tube AR 17-18 at 40).  Given the history of [          ] non-cooperation, Garg Tube's decision to continue doing business with [        ], and Garg Tube's failure to make efforts beyond those that failed to induce cooperation in the past, Garg Tube failed to demonstrate that it did the maximum it was able to do to respond to Commerce's requests for cost information in this segment of the proceeding. *See* IDM at 41. Accordingly, Commerce determined that "Garg Tube's efforts, documented on the record, did not serve as a strong inducement for the suppliers in question to cooperate and, therefore, Garg Tube did not act to the best of its ability in attempting to obtain the suppliers' costs."  *Id.*

Garg Tube is a knowledgeable respondent with prior experience in this proceeding.  *See* IDM at 42; *see also* Garg Tube Br. at 27.  It was well aware that Commerce needs cost data to calculate dumping margins and of Commerce's practice for dealing with missing information because these issues have been addressed in prior reviews.  *See* IDM at 42 (citing PDM at 10-11).   Indeed, Commerce has previously applied AFA in calculating the weighted-average margin for respondents, including Garg Tube, based on their failure to provide cost information from unaffiliated suppliers.  *See id*.  Commerce stated in its preliminary results that "{i}n this administrative review, even after we applied this methodology as partial adverse facts available in the prior review, unaffiliated suppliers continue to fail to cooperate with our request for information."  PDM at 10-11.  Given this history, by not requiring its unaffiliated producer to agree to cooperate with Commerce's requests in antidumping proceedings before engaging in business with them and by not providing Commerce with evidence that it made efforts beyond

those that failed to induce cooperation in the past, Garg Tube failed to demonstrate that it did the maximum it was able to do to obtain the factor of production information in this segment of the proceeding.  *See id*.  In other words, Garg Tube chose to do business with uncooperative suppliers knowing that: 1) it and the suppliers would be subject to Commerce's reporting requirements if examined in a review, 2) its past efforts to obtain information from the suppliers were unsuccessful, and 3) the suppliers may decline to cooperate in this review.  *See* IDM at 42.

Given these facts, it was reasonable for Commerce to rely on partial AFA to fill the gap caused by its supplier's failure to provide necessary cost information.  Though Garg Tube argues that there is no evidence that it has leverage or market power over its supplier, Garg Tube Br. at 26-27, this argument ignores the history of this proceeding.  Garg Tube's history as a respondent in this proceeding and its past inability to secure information from its suppliers demonstrate that Garg Tube should have taken steps to avoid its suppliers' noncooperation to demonstrate that it put forth its maximum effort to comply with its reporting responsibilities.  *See* IDM at 42 (citations omitted).  Thus, it was reasonable for Commerce to determine that, by choosing to do business with uncooperative suppliers and subsequently failing to report cost of production information, Garg Tube failed to cooperate to the best of its ability.  *See* IDM at 42.

As Commerce explained in the final results, the Federal Circuit's decision in *Mueller* addressed a similar scenario where a respondent's unaffiliated supplier failed to provide its cost information to Commerce.  *See Mueller Comercial De Mexico v. United States*, 753 F.3d 1227 (Fed. Cir. 2014) (*Mueller*); *see also* IDM at 40.  The Court in *Mueller* reasoned that the application of partial AFA would be appropriate where an unaffiliated supplier failed to provide information and the respondent maintained a degree of control over the non-cooperating supplier such that an adverse inference would have the effect of inducing cooperation.  In *Mueller*, the

Court observed that the respondent's refusal to do business with the supplier in the future is a potential tactic to force the supplier to cooperate, or that the respondent's unwillingness to export goods produced by the supplier is a potential measure to induce supplier's cooperation. *Id.* at 1233, 1236. Thus, Commerce is not barred, under appropriate circumstances, "from drawing adverse inferences against a non-cooperating party that have collateral consequences for a cooperating party, or from relying on inducement or deterrence considerations in determining a dumping margin for a cooperating party as long as the application of those policies is reasonable on the particular facts and the predominant interest in accuracy is properly taken into account." *Id.* at 1233-36.

We recognize that the mandatory respondent in *Mueller* cooperated with Commerce during the review and that this Court has viewed *Mueller*'s applicability as limited to cases involving an uncooperative supplier and a cooperative mandatory respondent. *See Garg Tube I*, 527 F. Supp. 3d at 1372 ("However, *Mueller* governs Commerce's incorporation of adverse inferences under subsection (a), not subsection (b)."); *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292, 1319 (Ct. Int'l Trade 2019) ("Generally, Commerce's decision to rely on subsection (a) versus (b) (or vice versa) is critical, as the two subsections involve varying levels of review and trigger separate lines of jurisprudence."). We also acknowledge that, in *Garg Tube I*, this Court held that it could not discern whether Commerce's analysis was based on 19 U.S.C. § 1677e(a) or (b) given conflicting language in the final decision memorandum regarding the applicability of *Mueller* and Garg Tube's cooperation. *See Garg Tube I*, 527 F. Supp. 3d at 1372. While some of the same language appears in the final decision memorandum in this review, we respectfully submit that Commerce's decisional path here is reasonably discernible and that its determination should be sustained. *See Wheatland Tube Co. v. United States*, 161

F.3d 1365, 1369-70 (Fed. Cir. 1998) ("Where the path of an agency's reasoning is reasonably discernible, this Court may nonetheless sustain the agency's action.").

As an initial matter, this Court's interpretation of *Mueller* as relevant only to determinations under 19 U.S.C. § 1677e(a) rather than (b) is relatively new and Commerce did not have the benefit of this Court's analysis when it drafted the Final Results. Commerce did not historically draw this distinction in its administrative practice, which contributed to some confusion during *Garg I*. *See Garg Tube I*, 527 F. Supp. 3d at 1372; *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292, 1319-20, 1334-35 (Ct. Int'l Trade 2019) (finding that Commerce impermissibly "used an adverse inference invoking 1677e(b) based on the suppliers' lack of cooperation to calculate Canadian Solar's rate" because *Mueller* "does not provide for an adverse inference against a cooperative respondent under subsection 1677e(b)"). In this review as well, Commerce did not articulate as clearly as it could have whether its determination with respect to the missing cost data was based on [      ] failure to cooperate, Garg Tube's failure to cooperate, or some combination thereof. However, it is reasonably discernible that Commerce found that both Garg Tube and [      ] failed to cooperate to the best of their abilities such that the adverse inference extended to both parties and, thus, section 1677e(b) applies here.

Commerce's determination is reasonably discernible because it found that Garg Tube "failed to act to the best of its ability" because its efforts "did not serve as a strong inducement for the suppliers in question to cooperate." *See* IDM at 41. Commerce further determined that it was necessary to change its methodology from the immediately preceding review to induce future cooperation. In particular, Commerce explained that "in contrast to the methodology used in the last review to determine the AFA information, the methodology we used in this review *is sufficiently adverse to Garg Tube's interests*" given Garg Tube's continued sourcing from

uncooperative suppliers.  *See* IDM at 42 (emphasis added).  The distinct language used in these Final Results shows that Commerce changed its methodology in applying partial AFA to be more adverse to Garg Tube's interests and this demonstrates that Commerce intended to extend the adverse inference to Garg Tube.  *See* IDM at 41-42.

Notably, in more recent proceedings following the review in this case, Commerce has explicitly drawn an adverse inference in selecting from the available information where – as here – the mandatory respondent continued to source from suppliers that previously failed to cooperate with Commerce's information requests.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 38,379 (Dep't of Commerce June 28, 2022) (final results of AD admin. review), and accompanying IDM at Comment 1.  For example, in the 2019-2020 review of the antidumping duty order on solar cells from China, a respondent claimed that it "requested FOP data from {its} uncooperative producers multiple times during the review, informed them it would cease doing business with them if they did not cooperate, and notified them that it would only purchase from companies that would cooperate in such proceedings."  *Id.*  Commerce nonetheless found those efforts insufficient given a history of supplier non-cooperation in the proceeding, concluding that "by not requiring its unaffiliated producers to agree to cooperate with Commerce's informal requests in AD proceedings *before* engaging in business with them, and not providing Commerce with evidence that it made any efforts beyond those which have, in the past, failed to induce cooperation," the respondent failed to act to the best of its ability.  *Id.*  This decision did not reference or rely upon *Mueller*, and Commerce explicitly applied an adverse inference due to the non-cooperation of both the unaffiliated producers and the respondent.  *Id.*

Therefore, applying an adverse inference to both Garg Tube and [       ] would be consistent with recent Commerce practice that more clearly differentiates between decisions under 19 U.S.C. § 1677e(a) and (b) in the unaffiliated supplier context.  While we acknowledge that Commerce's analysis in this case lacks some of the clarity provided in current administrative practice, for the reasons articulated above, we respectfully submit that Commerce's intended path is reasonably discernible and should be sustained.

### 3.      Garg Tube's Cited Cases Do Not Undermine Commerce's Determination

The fact that Garg Tube continued to source from uncooperative suppliers distinguishes this review from the cases relied upon by Garg Tube in its brief.  *See* Garg Tube Br. at 24.  For example, in *Risen Energy Co. v. United States*, 569 F. Supp. 3d 1315, 1336 (Ct. Int'l Trade 2022), Commerce concluded that unaffiliated suppliers of respondents Trina Solar and Risen Energy failed to cooperate to the best of their abilities, warranting the use of partial adverse facts available to fill in the missing factor of production data.  The Court in *Risen Energy* found that Commerce failed to demonstrate that Trina and Risen did not cooperate to the best of their ability by continuing to do business with the non-cooperative unaffiliated suppliers.  *Id.*  While Commerce found that the supplier relationships were "longstanding," the Court held that there was no evidence that the non-cooperative unaffiliated suppliers in the present review are the same suppliers who were uncooperative in prior reviews.  *See id.* at 1336-37.  Commerce's decision to apply facts available with an adverse inference was remanded in part for this reason. *Id*.  On remand, Commerce, under respectful protest, applied partial neutral facts available instead of applying an adverse inference when selecting facts otherwise available in calculating

Trina and Risen's dumping margins.  *Risen Energy Co., Ltd. v. United States*, 611 F. Supp. 3d 1384, 1388 (Ct. Int'l Trade 2022).  The Court sustained Commerce's use of neutral facts available.  *Id.* at 1391.

However, *Risen Energy* is distinguishable because in that case there was no evidence that the non-cooperative unaffiliated suppliers in the current review were the same suppliers who were uncooperative in prior reviews.  *See* 569 F. Supp. 3d at 1336.  Here, there is evidence that Garg Tube continued to source from [      ] despite it being uncooperative in the prior review.  *See* PDM at 10-11; *see also* IDM at 42 (citing India Pipe and Tube AR 17-18 at 40); *see also* Jan. 23, 2020 Section A-D Questionnaire Response at 39 (P.R. 119) (C.R. 48) ("It may be noted that, the circumstances of this issue is exactly same as was in in the last admin review in which Department has asked [      ] and [      ] to respond but none of these supplier provide any data to Garg Tube.").

The facts in this case are also distinguishable from those at issue in *Venus Wire Industries Pvt. Ltd v. United States*, 471 F. Supp. 3d 1289 (Ct. Int'l Trade 2020).  In that case, Commerce's decision to use partial facts available with an adverse inference against an uncooperative unaffiliated supplier was remanded by this Court because Commerce failed to adequately consider (1) evidence that the respondent's efforts to obtain cost information failed because of circumstances beyond its control; and (2) evidence demonstrating that an unaffiliated supplier is not evading its own antidumping rate by supplying subject merchandise to an exporter with a lower rate.  *Id.* at 1310.  Also in *Venus Wire*, record evidence showed that the suppliers had concerns that providing the cost information did not serve the supplier's own interests.  *Id.* at 1311.  Here, unlike in *Venus Wire*, Commerce identified evidence indicating that Garg Tube could potentially induce its unaffiliated suppliers' cooperation.  In this case, [      ] sourced a

substantial volume of pipe and tube for Garg Tube's export sales to the United States.  IDM at

41.  Also, in this review, Commerce explained that Garg Tube continued to source from

uncooperative suppliers notwithstanding that prior attempts to induce cooperation had failed.

Commerce acted reasonably by requesting necessary information, issuing deficiency

questionnaires, and using data available on the record in using an adverse inference when

selecting from among the facts otherwise available to account for the gap created by the

information that has been withheld.  It was lawful for Commerce to incentivize parties' full

cooperation by using adverse inferences where merited, whereas the opposite result would

incentivize noncooperation by making it clear that there are no consequences (and potentially

benefits) to Garg Tube and its suppliers from failing to provide necessary information.

Commerce's determination to apply partial AFA should therefore be sustained.

## VI.    Garg Tube Failed To Exhaust Its Administrative Remedies Regarding Its Challenges To Commerce's Differential Pricing Methodology

Garg Tube argues that the conditions necessary for Commerce to rely on the Cohen's *d*

test in its differential pricing analysis were not satisfied and that Commerce's methodology for

determining the denominator of the Cohen's *d* test is unreasonable and unsupported by

substantial evidence.  *See* Garg Tube Br. at 28-36.  However, Garg Tube failed to exhaust its

administrative remedies with respect to these arguments because it did not raise them to the

agency in its case briefs before Commerce prior to the final results.  *See generally* IDM.  As

such, consistent with 28 U.S.C. § 2637(d), this Court should disregard Garg Tube's challenges to

Commerce's differential pricing methodology.

### A.    Legal Framework For Exhaustion

Congress has mandated that "the Court of International Trade shall, where appropriate,

require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  This statute "indicates

a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (citing *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).  As such, courts require parties to exhaust administrative remedies before the agency by raising all issues in their initial case briefs before Commerce.  *See Prime Time Commerce LLC v. United States*, 495 F. Supp. 3d 1308, 1313-14 (Ct. Int'l Trade 2021) (citing *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (internal citation omitted); *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383 (Fed. Cir. 2008); and *ABB, Inc. v. United States*, 920 F.3d 811, 818 (Fed. Cir. 2019)).

Commerce's regulations also address the requirement that parties submit a case brief that contains all the arguments that the submitters view to be relevant to the final determination.  *See* 19 C.F.R. § 351.309(c)(2). "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).  "Exhaustion serves two main purposes: 'to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors,' and to 'promot{e} judicial efficiency by enabling an agency to correct its own errors so as to moot judicial controversies.'" *Stanley Works (Langfang) Fastening Systems Co. v. United States*, 279 F. Supp. 3d 1172, 1189 (Ct. Int'l Trade 2021) (quoting *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998)); *see also Corus Staal*, 502 F.3d at 1379-80 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145

(1992)); *Clearon Corp. v. United States*, 800 F. Supp. 2d 1355, 1362 (Ct. Int'l Trade 2011).  As

such, the Court "generally takes a 'strict view' of the requirement that parties exhaust their

administrative remedies before the Department of Commerce in trade cases."  *Corus Staal*, 502

F.3d at 1379; *accord Clearon Corp.*, 800 F. Supp. 2d at 1362 (Ct. Int'l Trade 2011); *see also*

*Nucor Corp. v. United States*, 286 F. Supp. 3d 1364, 1377 (Ct. Int'l Trade 2018), *aff'd*, 927 F.3d

1243 (Fed. Cir. 2019); *Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 342 F. Supp. 2d 1191,

1205 (Ct. Int'l Trade 2004); *Pohang Iron & Steel Co. v. United States*, 23 CIT 778, 792 (Ct. Int'l

Trade 1992).

Exceptions to the exhaustion requirement are limited, such as when it would have clearly

been "futile" or the issue for the Court is a "pure question of law" that can be addressed without

further factual development or further agency exercise of discretion.  *Itochu Bldg. Prods. v.*

*United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013).

**B.      Garg Tube Did Not Challenge The Differential Pricing Methodology Prior**
**To The Final Results**

Commerce applied its differential pricing methodology in the underlying review and

Garg Tube's case brief submitted to Commerce contained no arguments regarding differential

pricing or the Cohen's *d* test.  *See generally* Garg Tube Administrative Case Br. (P.R. 130).

Only during the remand proceedings earlier this year did Garg Tube argue that the application of

the Cohen's *d* test in Commerce's differential pricing analysis is unreasonable.  *See* Remand

Results at 5.  Garg Tube failed to exhaust its administrative remedies with respect to these

arguments, and as discussed below, no exceptions to the exhaustion doctrine apply.  Therefore,

the Court should not consider Garg Tube's unexhausted arguments.

Garg Tube argues that because Commerce applied its differential pricing methodology

when recalculating Garg Tube's antidumping rate on remand, Garg Tube exhausted its

administrative remedies by challenging the differential pricing methodology in the draft remand results.  Garg Tube Br. at 32 (citing *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1384 (Fed. Cir. 2008) (*Mittal Steel*) ("a party must "raise the issue at the appropriate time on remand' in order 'to exhaust its administrative remedies before Commerce.").   However, *Mittal Steel* is distinguishable.  In that case, the Court found that the plaintiff abandoned the argument by failing to raise it again during a subsequent remand proceeding.  Here, however, Garg Tube did not raise its differential pricing arguments *at all* during the underlying review and instead sought to belatedly introduce arguments that it should have raised in its administrative case brief.  *See* 19 C.F.R. § 351.309(c)(2).  Indeed, while Commerce recalculated Garg Tube's margin on remand, Commerce applied the same methodology in both proceedings.  *See* PDM at 3-6; *see also* Remand Results at 5-6.  Therefore, Garg Tube failed to exhaust its administrative remedies with respect to Commerce's differential pricing analysis and waived the arguments it now seeks to raise.  *See NEXTEEL Co. v. United States*, 461 F. Supp. 3d 1336, 1345-46 (Ct. Int'l Trade 2020) (finding claim waived where party was "aware of" a methodology during the review but failed to raise the issue in its case brief and instead waited until draft remand comments).

Garg Tube alternatively argues that the "Cohen's *d* issue raised . . . on remand falls squarely within recognized exceptions to the exhaustion doctrine."  *See* Garg Tube Br. at 33. However, this is incorrect.  Exceptions to the exhaustion requirement are limited, such as when taking a certain action would be futile, the issue for the Court is a "pure question of law," when the plaintiff did not have timely access to the confidential record, or a new interpretation from an intervening judicial decision would impact the agency's action.  *Itochu Bldg. Prods. v. United*

*States*, 630 F. Supp. 1317, 1319 (1986); *see Luoyang Bearing Factor v. United States*, 240 F. Supp. 2d 1268, 1297 n.26 (Ct. Int'l Trade 2002).[5]

Garg Tube argues that it would have been "futile for a respondent to frontally attack Cohen's *d*" prior to the Federal Circuit issuing its decision in *Stupp Corporation v. United States,* 5 F.4th 1341 (Fed. Cir. 2021) (*Stupp III*) because the law appeared to have been "settled" on this issue. *See* Garg Tube Br. at 34. There is no evidence that such an argument would have clearly been "futile." *See Itochu Bldg. Prods.*, 733 F.3d at 1146. The futility exception is narrow and strictly viewed: the "mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." *Corus Staal*, 502 F.3d at 1378-81. Had Garg Tube raised arguments about differential pricing in its case brief in the review (as was common in many other proceedings during this time), then Commerce would have had the opportunity to consider and address these arguments in the final results. *See, e.g.*, *Stanley Works (Langfang) Fastening Systems Co., Ltd. v. United States*, 279 F. Supp. 3d 1172, 1189 (Ct. Int'l Trade 2017) (holding that had the plaintiff raised this argument regarding the Meaningful Difference Test during the administrative proceedings, Commerce would have had the opportunity to better develop the record and apply its expertise to assess its use of the Meaningful Difference Test).

To the extent Garg Tube invokes the intervening judicial decision exception to the exhaustion doctrine, that exception likewise does not apply. Citing *Stupp III*, Garg Tube argues that Commerce failed to explain how Garg Tube met the three conditions that are a precondition to utilizing the Cohen's *d* test. Garg Tube Br. at 28. However, and as discussed further below,

---

[5] Garg Tube had timely access to the confidential record and has not claimed that it did not have such access. *See Philipp Bros. Inc., v. United States*, 630 F. Supp. 1317, 1319 (Ct. Int'l Trade 1986). Therefore, we address the remaining exhaustion exceptions below.

Garg Tube's arguments on this point misunderstand the Federal Circuit's holding in *Stupp III*. Garg Tube Br. at 28-32.  The Federal Circuit did not consider Commerce's use of Cohen's *d per se* unlawful in *Stupp III* but instead remanded for further consideration or analysis.  *See Stupp,* 5 F.4th at 1357-60.  Further, following *Stupp III*, Commerce has continued to apply its differential pricing methodology in the *Stupp* litigation and has been affirmed by this Court.  *Stupp Corporation v. United States*, 619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023) (*Stupp IV*) (appeal pending).  Moreover, the administrative record being reviewed here is different from that before the Court in *Stupp III*.  *See* 19 U.S.C. § 1516a(b)(2)(A).  "To qualify for the intervening judicial decision exception, there must have been 'judicial interpretations of existing law after decision below and pending appeal—interpretations which if applied might have materially altered the result.'"  *See Gerber Food (Yunnan) Co. v. United States*, 601 F. Supp. 2d 1370, 1380 (Ct. Int'l Trade 2009) (quoting *Hormel v. Helvering*, 312 U.S. 552, 558-59 (1941).  Because there is no evidence of a final intervening judicial decision that would have affected Commerce's determination to employ its differential pricing methodology under these circumstances, the intervening judicial decision exception does not apply.

Additionally, the issue for the Court is not a "pure question of law" that can be addressed without further factual development or further agency exercise of discretion.  *See Itochu Bldg. Prods.*, 733 F.3d at 1146.  The pure question of law exception applies when (1) plaintiff raises a new argument; (2) this argument is of a purely legal nature; (3) the inquiry requires neither further agency involvement nor additional fact finding or opening up the record; and (4) the inquiry neither creates undue delay nor causes expenditure of scarce party time and resources.  *Zhongce Rubber Group Co. Ltd., v. United States*, 352 F. Supp. 3d 1276, 1279-80 (Ct. Int'l Trade 2018).  When "the question is whether the methodology is justifiable" the resolution of

that question requires that a "factual record needs to be developed." *Stanley Works*, 279 F. Supp. at 1384-85; *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1372 (Ct. Int'l Trade 2018). Garg Tube's claim is not a purely legal question because it concerns Commerce's Cohen's *d* methodology, which is grounded in the data and factual record, and therefore, dependent on the facts of this case.

Finally, apart from a failure to exhaust administrative remedies, this Court has recognized that the failure to raise an argument in an administrative case brief, as required by 19 C.F.R. 351.309, is an independent basis to decline to entertain a new argument. *See Corus Staal*, 502 F.3d at 1379 (explaining that the context of 19 C.F.R 351.309 the exhaustion requirement "is therefore a requirement explicitly imposed by the agency as a prerequisite to judicial review"); *see also Samsung Electronics Co. Ltd., v. United States*, 72 F. Supp. 3d 1359, 1371 (Ct. Int'l Trade 2015) ("A violation of Commerce's regulation, therefore, supplies an independent ground for determining that an argument has not been exhausted.").

In addition to its arguments regarding *Stupp III*, Garg Tube also argues that Commerce's method for determining the denominator in the Cohen's *d* test is unreasonable and unsupported by substantial evidence. *See* Garg Tube Br. at 35-36. However, Garg Tube also did not raise this argument in its administrative case brief, nor does it articulate any applicable exception to the exhaustion doctrine that applies to this claim. Indeed, no such exception exists because the reasonableness of Commerce's method of calculating the Cohen's *d* denominator is not a pure question of law, there is no indication that raising this argument would have been futile, there is

no controlling intervening legal authority,[6] and Garg Tube does not claim that it lacked access to the confidential record.

Thus, because Garg Tube failed to exhaust its administrative remedies with respect to its differential pricing claims, the Court should decline to consider those arguments.

### C.   Even If The Court Finds That Garg Tube Exhausted Its Administrative Remedies, Garg Tube Has Still Misinterpreted *Stupp III*

As noted above, Garg Tube argues that "in order for the Cohen's *d* test to reliably determine the 'effect sizes' of the price comparisons, which Commerce uses to determine whether differences in prices are 'significant', a dataset must fulfill three key preconditions." Garg Tube Br. at 29.  That assertion entirely misstates the Federal Circuit's holding in *Stupp III*. In *Stupp III*, the Federal Circuit only noted that it had three concerns related to Commerce's use of the Cohen's *d* test in its differential pricing analysis.  *Stupp III*, 5 F.4th at 1356-57.  Those concerns related to the numerosity of observations in the sales data, the normality of the distribution of the data, and variance of the sales data.  *Id.*  However, the Federal Circuit expressly stated that it was remanding for Commerce to provide further explanation on those points.  *Id.*  It did not indicate that they were "preconditions" for the use of the Cohen's *d* test as Garg Tube claims.

Furthermore, not only has Garg Tube overread the Federal Circuit's 2021 *Stupp III* decision, but it barely acknowledges the fact that this Court affirmed Commerce's explanation on remand in *Stupp IV*.  *See* Garg Tube Br. at 29 n. 4.  That bare acknowledgment fails to grapple with the fact that, not only did the Federal Circuit not set "preconditions" for the use of Cohen's

---

[6] Garg Tube cites the Federal Circuit's determination in *Mid Continent Steel & Wire, Inc v. United States*, 31 F.4th 1367 (Fed. Cir. 2022).  However, Garg Tube does not explain why that decision is controlling in the case and, as with *Stupp*, that litigation remains ongoing.

*d* in *Stupp III*, but that this Court affirmed Commerce's use of the Cohen's *d* test in a situation where those "preconditions" were not met. *Stupp IV*, 619 F.Supp.3d at 1324-1326. In that case, Commerce explained "that the Cohen's *d* test does not operate in a vacuum" and that its use on populations of small size, without normal distribution, or unequal variance was reasonable. *Id.* Thus, Garg Tube's attempt to rely on *Stupp III*, to assert that Commerce erred by utilizing Cohen's *d* here as part of its differential pricing analysis is entirely misplaced—even if the Court holds that Garg Tube exhausted its administrative remedies.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Garg Tube's motion for judgment on the agency record and sustain Commerce's Final Results in its entirety.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

BRISHAILAH BROWN
Attorneys
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

/s/ Robert R. Kiepura
ROBERT R. KIEPURA
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-4436
Fax: (202) 353-0461
Email: Robert.Kiepura@usdoj.gov

November 20, 2023

*Attorneys for Defendant United States*

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 9,946, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

<u>/s/ Robert R. Kiepura</u>