# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE CLAIRE R. KELLY

| | |
|---|---|
| GARG TUBE EXPORT LLP and GARG TUBE LIMITED, | |
| Plaintiffs, | Court No. 21-00169 |
| v. | **PUBLIC VERSION** |
| UNITED STATES, | |
| Defendant, | |
| and | |
| NUCOR TUBULAR PRODUCTS INC. and WHEATLAND TUBE, | |
| Defendant-Intervenors. | |

**PLAINTIFFS' REPLY TO RESPONSES OF DEFENDANT AND DEFENDANT-INERVENOR TO PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Ned H. Marshak
Dharmendra N. Choudhary
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
**

1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Garg Tube Export LLP and Garg Tube Limited*

Dated: January 19, 2024

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................... 1
II. COMMERCE'S APPLICATION OF AFA WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND WAS CONTRARY TO LAW ................................ 3
  A. THE GOVERNENT AND NUCOR FAIL IN THEIR ATTEMPT TO DISTINGUISH AR18/19 FROM AR17/18. ......................................................................... 3
  B. COMMERCE'S AFA DECISION IS CONTRARY TO JUDICIAL PRECEDENT .. 9
III. GARG EXHAUSTED ITS REMEDIES WITH RESPECT TO THE COHEN'S *d* METHODOLOGY ............................................................................................................ 12
IV. CONCLUSION ................................................................................................................. 16

**TABLE OF AUTHORITIES**

**Cases**

*Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024 (Fed. Cir. 2007) .................................. 14
*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) .......................................... 8
*Canadian Solar Int'l Ltd. v. United States,* 378 F. Supp. 3d 1292 (CIT 2019) ........................... 9
*Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326 (CIT 2019) ...................... 9, 10
*Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312 (CIT 2016) .................................. 6
*Dalian Hualing Wood Co. v. United States*, 2023 WL 8714847 (CIT Dec. 18, 2023) ............... 15
*Garg Tube Export LLP v. United States*, 527 F. Supp. 3d 1362 (CIT 2021)......................... passim
*Garg Tube Export LLP v. United States*, 569 F. Supp. 3d 1202 (CIT 2022).............................. 2, 9
*HiSteel Co. v. United States*, 653 F. Supp. 3d 1341 (CIT 2023) ................................................. 13
*Hyundai Heavy Indus. Co. v. United States*, 393 F. Supp. 3d 1293 (CIT 2019) .......................... 8
*Itochu Bldg. Prod. v. United States,* 733 F.3d 1140 (Fed. Cir. 2013).................................... 14, 15
*Itochu Bldg. Prods. Co. v. United States*, 2018 WL 1445676 (CIT Mar. 22, 2018) ................ 9, 10
*Itochu Building Products Co. v. United States*, 2017 WL 2703810 (CIT June 22, 2017)............. 9
*Kisaan Die Tech Pvt. v. United States,* 2023 WL 8525595 (CIT Dec. 8, 2023) ......................... 15
*Mueller Commercial de Mexico, S. de R.L. de C.V. v. United States*, 753 F.3d 1227
   (Fed. Cir. 2014)............................................................................................................. 3, 11, 12
*Nagase & Co. v. United States*, 628 F. Supp. 3d 1326 (CIT 2023) .............................................. 8
*Papierfabrik Aug. Koehler AG v. United States,* 36 CIT 1632 (2012) ....................................... 14
*Risen Energy Co. v. United States*, 611 F. Supp. 3d 1384 (CIT 2022).................................. 7, 8, 9
*Shanghai Tainai Bearing Co. v. United States*, 658 F. Supp. 3d 1269 (CIT 2023)................ 11, 12
*Siemens Gamesa Renewable Energy v. United States*, 621 F. Supp. 3d 1337 (CIT 2023) .... 14, 15
*SolarWorld Ams., Inc. v. United States*, 234 F. Supp. 3d 1286 (CIT 2017) ............................ 9, 10
*Stupp Corp. v. United States,* 5 F.4th 1341 (Fed. Cir. 2021)..................................................... 2, 12
*Stupp Corp. v. United States,* 619 F. Supp. 3d 1314 (CIT 2023) ........................................... 13, 14
*Venus Wire Indus. Pvt. Ltd. v. United States*, 471 F. Supp. 3d 1289 (CIT 2020)........... 8, 9, 10, 12


**Statutes**
19 U.S.C. § 1677f-1 ................................................................................................................ 14, 15

**Federal Register Notices**
*Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty*
   *Administrative Review*, 86 Fed. Reg. 14,872 (Mar. 19, 2021)............................................ passim
*Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping*
   *Duty Administrative Review; 2017/18*, 85 Fed. Reg. 2715 (Jan. 16, 2020)................................ 5
*Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Results of*
   *Antidumping Duty Administrative Review; 2018-2019*, 85 Fed. Reg. 44,860 (July 24, 2020)... 5

**I.     INTRODUCTION**

In this Reply Brief, Plaintiffs Garg Tube Export LLP and Garg Tube Limited (collectively, "Garg") respond to Defendant, United States (the "Government" and "Gov. Br."), ECF 57-58 (Nov. 20, 2023), and Defendant-Intervenor, Nucor Tubular Products Inc. ("Nucor" and "Nucor Br."),[1] ECF 59-60 (Nov. 20, 2023) responses to Garg's Motion for Judgment on the Agency Record and Comments on Commerce's Remand Redetermination ("Garg Brief" and "Garg Br."), ECF 53-54 (July 31, 2023).

Garg's Brief challenged two subsidiary findings in the U.S. Department of Commerce's ("Commerce" or the "Department") final determination in the 2018-19 administrative review ("AR18/19") of the antidumping duty ("ADD") order on *Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty Administrative Review*, 86 Fed. Reg. 14,872 (Mar. 19, 2021), P.R. 238 ("*Final Results*"), as amended by the Final Results of Redetermination Pursuant to Court Remand, filed by Defendant United States on March 20, 2023, ECF 42-2, P.R.R. 4 ("*Voluntary Remand*"). The *Final Results* and *Voluntary Remand* cover the period of review ("POR") from May 1, 2018, to April 30, 2019.

First, Garg challenged Commerce's decision to rely on adverse facts available ("AFA") to calculate the costs of inputs provided to Garg by its unaffiliated vendor, [

           ], as discussed in Commerce's Issues and Decision Memorandum (Mar. 15, 2020), P.R. 235 ("IDM"). In its IDM, Commerce expressly held that its decision to rely on AFA was based on [       ] failure to reply to Commerce's questionnaire, rather than Garg's failure to submit data. Yet, as the same time, Commerce reasoned that Garg failed to put forth its maximum efforts in inducing [       ] to cooperate. Commerce's IDM also repeatedly noted that

---

[1]     Defendant-Intervenor Wheatland Tube did not file a response brief, and accordingly appears to have abandoned its support of the Government in this appeal.

its decision in AR18/19 was based on the identical rationale as its decision in the immediately preceding 2017-18 administrative review ("AR17/18") coving the POR from May 1, 2017, to April 30, 2018. However, Commerce's AR17/18 decision was remanded for further analysis on July 9, 2021, in *Garg Tube Export LLP v. United States*, 527 F. Supp. 3d 1362, 1373-74 (CIT 2021) ("*Garg I*"), and ultimately was reversed by Commerce. *Final Results of Redetermination Pursuant to Court Remand* (Oct. 4, 2021), Court No. 20-00026, ECF 73 ("*AR17/18 Redetermination*"), at 3. This Court affirmed Commerce's redetermination not to apply AFA to Garg in *Garg Tube Export LLP v. United States*, 569 F. Supp. 3d 1202, 1221 (CIT 2022) ("*Garg II*"). In light of this history, Garg asks this Court to follow its decisions in *Garg I* and *II*, and remand the *Voluntary Remand* by instructing Commerce to follow its *AR17/18 Redetermination* rationale; that is, to calculate [     ] costs based on [     ] sales price to Garg.

Second, Garg argued that Commerce's reliance on the Cohen's *d* test to determine whether Garg engaged in targeted dumping during AR18/19 was contrary to law, insofar as Commerce did not consider the analysis required by the Court of Appeals for the Federal Circuit ("Federal Circuit" or "CAFC") in *Stupp Corp. v. United States,* 5 F.4th 1341, 1351-52 (Fed. Cir. 2021). In its *Voluntary Remand*, Commerce refused to consider Garg's Cohen's *d* argument, claiming that Garg failed to exhaust its administrative remedies. Garg's initial Brief argued that on remand, Commerce applied Cohen's *d* to Garg's database, thereby subjecting Cohen's *d* to judicial review irrespective of whether it had earlier been challenged during Commerce's initial determination. Moreover, as *Stupp* was decided on July 15, 2021, after Garg filed its Summons and Complaint in this AR18/19 appeal, this case falls squarely within the futility, question of law, and intervening judicial decision changing the law exceptions to the exhaustion doctrine.

2

The reasons why the Government and Nucor were unable to rehabilitate Commerce's flawed decision follow.

## II. COMMERCE'S APPLICATION OF AFA WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND WAS CONTRARY TO LAW

### A. THE GOVERNENT AND NUCOR FAIL IN THEIR ATTEMPT TO DISTINGUISH AR18/19 FROM AR17/18.

Garg's initial Brief directed this Court's attention to the substantial similarity between Commerce's AFA analysis in AR17/18 – which subsequently was reversed in *Garg I* and *II* – and AR18/19. Garg Br. at 18-28. Commerce's AR17/18 and AR18/19 analyses are virtually identical, and many of Commerce's AR18/19 comments are preceded by statements confirming that its decision in AR17/18 controlled its decision in AR18/19, including:

- "Specifically, as we explained in the previous administrative review";

- "Further, as we explained in the previous administrative review";

- "Here, as we found in the previous review";

- "In the previous review, Commerce explicitly found";

- "In this review, as we found previously and reiterated above";

- "Commerce fully explained its approach in the previous review";

- "As it did in the previous review, this explanation supports . . . .";

- "As we explained in the previous review and continue to find here, the controlling judicial precedent for the circumstances at hand is the decision in *Mueller {Comercial De Mexico, S. de R.L. De C.V. v. United States*, 753 F.3d 1227 (Fed. Cir. 2014)}.";

- "In referencing the explanation that we provided in the previous administrative review, we continue to maintain here that . . .";

- "Similar to our finding in the previous review, on the basis of the above discussion";

3

- "Here, just as we found previously, concerning inducement considerations envisioned in *Mueller*, it is reasonable to assume that Garg Tube maintained sufficient control over the suppliers in question";

- "On the basis of our reasoning adopted from the previous review, we find that using Garg Tube's proxy for unaffiliated suppliers' {cost of production ("COP")} "would allow the unaffiliated supplier{s} to conceal{their} true production costs of subject merchandise while continuing to sell {it} in the U.S. market by funneling such merchandise through Garg Tube."; and

- "Similar to the rationale we espoused in the previous review, and notwithstanding Garg Tube's efforts to obtain the actual COPs of pipe and tube from the suppliers in question, we find that Garg Tube failed to put forth its maximum efforts in inducing them to cooperate."

IDM at 38-41.

As these quotations reveal, Commerce's *Final Results* in AR18/19 – the decision whose analysis is challenged by Garg in this Civil Action – are based on the identical flawed analysis which this Court rejected in *Garg I*, 527 F. Supp. 3d at 1373-74. The attempts by the Government and Nucor to distinguish these decisions fail.

The Government and Nucor's primary argument is that AR18/19 is the second AR in which the issue of unaffiliated supplier co-operation arose. The Government and Nucor state:

- In AR18/19 "uncooperative suppliers continued not to cooperate . . . ." Gov. Br. at 6; *see* Nucor Br. at 2, 12;

- "Given the history of [    ] non-cooperation Garg's decision to continue doing business with [    ], and Garg's failure to make efforts beyond those that failed in the past, Garg failed to demonstrate that it did the maximum it was able to do to respond to Commerce's requests for cost information in this segment of the proceeding." Gov. Br. at 18-19;

- ". . . the mandatory respondent continued to source from suppliers that previously failed to cooperate with Commerce's information requests." Gov. Br. at 22-24;

- "this is no longer the first time the agency has asked for and failed to receive required cost information from Garg and its pipe suppliers." Nucor Br. at 13-15; and

4

- "And throughout the entire 2018- 2019 review, Garg and its pipe suppliers understood that Commerce required these data but they continued to refuse to provide it." *Id*. at 20.

This argument should be rejected. First, Commerce's AR18/19 decision was not based on the existence of new facts, which were not present in AR17/18. Commerce's rationale, as set forth in the IDM at pages 38-41, continuously focuses on the similarities between AR17/18 and AR18/19. Commerce's AR18/19 rationale does not suggest that AR18/19 should be distinguished from AR17/18 because Garg continued to source goods from [    ] in the AR18/19 review.

That Commerce followed its AR17/18 analysis in AR18/19 is not surprising. Commerce's final decision in AR17/18 was published on January 16, 2020. *Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 2715 (Jan. 16, 2020). Commerce's preliminary decision in AR18/19 was published on July 21, 2020. *Certain Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019*, 85 Fed. Reg. 44,860 (July 24, 2020), P.R. 202 ("*Preliminary Results*"), and accompanying Decision Memorandum (July 20, 2020), P.R. 193. And Commerce's final decision in AR18/19 was published on March 19, 2021. *Final Results*, 86 Fed. Reg. at 14,872. This Court did not reject Commerce's AR17/18 analysis until July 9, 2021 – after Commerce's final decision in AR18/19. *Compare id. with Garg I*, 527 F. Supp. 3d 1362. Until that time, Commerce had no reason to modify its prior analysis. As discussed in Garg's Brief (at pages 18-28) and summarized above, it did not.

Second, as noted above, the Government and Nucor repeatedly claim that Commerce's reliance on AFA in AR18/19 was justified because Garg should have changed its sourcing

patterns of AR18/19 as a result of Commerce's decision in AR17/18. This argument fails to consider the chronology of events in these reviews. AR17/18 encompassed shipments entered between May 1, 2017, and April 30, 2018; AR18/19 encompassed shipments entered between May 1, 2018 through April 30, 2019. Garg purchased inputs from [    ] in AR17/18 and AR18/19. Commerce first asked Garg to submit [    ] confidential cost data on November 30, 2018 – seven full months into AR18/19[2] – and [    ] did not finally advise Garg of its inability to respond to Commerce's request for costs data until January 4, 2018, merely four months before AR18/19 ended.[3] Moreover, Commerce did not transmit a request to [    ] to submit a complete cost of production questionnaire response until May 2, 2019, after AR18/19 ended.[4] These AR17/18 occurrences can and should be judicially noticed in this AR18/19 appeal. *See, e.g.*, *Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312, 1327 (CIT 2016) (relying on document from preceding review by citing its ACCESS barcode number).

Garg had no reason to change its sourcing patterns until Commerce requested that Garg's unaffiliated vendors submit cost data and its vendors refused to comply. As the above-referenced chronology of events reveals, these events did not occur until near the end of AR18/19. And since the POR is based on date of entry into the United States, as a practical matter Garg did not know that Commerce required that Garg change its sourcing patterns for merchandise produced, sold, and shipped to the United States in AR18/19 until **after** Garg already had sourced inputs from [    ].[5]

---

[2]  *See* U.S. Department of Commerce, A-533-502, AR17/18, First Supplemental Questionnaire (Nov. 30, 2018), ACCESS Barcode 3778772, at 12, Question 63.
[3]  *See* Garg, Response to Department of Commerce First Supplemental Questionnaire (Feb. 19, 2019) at 49-60, ACCESS Barcode 3794286.
[4]  *See* U.S. Department of Commerce, Transmittal of questionnaires to unaffiliated vendors, (May 2, 2019), ACCESS Barcodes 3828743, 3828745.
[5]  Nucor agrees that "the timing here is relevant" and suggests that because "the agency

Third, the sole instance in the AR18/19 IDM in which Commerce referenced the difference in AR17/18 and AR18/19 is at page 42, where Commerce noted that it was "adopting a different methodology in choosing the AFA information in this review" than it had adopted in AR17/18. IDM at 42. Commerce explained this change in methodology by initially quoting its preliminary decision:

> In this administrative review, even after we applied this methodology as partial adverse facts available in the prior review, unaffiliated suppliers continue to fail to cooperate with our request for information. Therefore, in this administrative review, as partial adverse facts available, we have used the production cost data for the product control number with the highest calculated COP as partial AFA for the missing cost data for these unaffiliated suppliers' pipes and tubes.

*Id*. Commerce continued:

> This language makes it clear that, in contrast to the methodology used in the last review to derive the AFA information, the methodology we used in this review is sufficiently adverse to Garg Tube' {sic} interests, given that Garg Tube continues to source pipe and tube from suppliers who refuse to cooperate with Commerce's requests for actual COP information, but repeatedly failing to induce cooperation from each of the suppliers from which Commerce sought this information. Garg Tube does not explain why the AFA methodology on which Commerce relied in this review is unreasonable given Commerce's explanation in in the *Preliminary Results* and the facts prevalent in this and in the immediately preceding review.

*Id*.

The Government and Nucor claim that the above-referenced analysis supports their position that Commerce's AR18/19 AFA rationale is not the same as its decision in AR17/18. *See* Gov. Br. at 14, 16, 19, 21-22; Nucor Br. at 2, 13-14, 17. These claims are wrong. IDM page 42 discusses the methodology used to calculate AFA. Commerce decided that a new AFA methodology should be used because the AR17/18 methodology was not sufficiently adverse to

---

issued a supplemental questionnaire to Garg on November 30, 2018, . . . for a significant portion of the POR, Garg knew that Commerce required cost information from [    ]." Nucor Br. at 16. It. As discussed above in this Reply Brief, the relevant timing in AR17/18 and AR18/19 supports the fact that Garg had no reason to drop [    ] as a supplier until after AR18/19 ended.

7

Garg. Commerce's decision **as to how to calculate AFA** raises different issues than **whether Commerce should apply AFA** in the first place. In this Civil Action, Garg is arguing that Commerce's decision to rely on AFA in AR18/19 is based on the identical flawed factors upon which Commerce relied in AR17/18 – a methodology which was rejected by this Court **after** Commerce issued its decision in AR18/19. In contrast, Garg is not challenging the methodology used by Commerce to calculate AFA, assuming that this Court agrees that AFA should apply. Thus, Commerce's reference at IDM page 42 to a difference between AFA methodologies in AR17/18 and AR18/19 is not relevant to this Court's decision as to whether Commerce's AR18/19 decision was supported by substantial evidence and in accordance with law.

Finally, it is axiomatic "the Court may not credit the Department of Justice's late attempt to craft an acceptable rationale supporting Commerce's determination because *post hoc* rationalizations are not permitted." *Nagase & Co. v. United States*, 628 F. Supp. 3d 1326, 1344 (CIT 2023); *see Hyundai Heavy Indus. Co. v. United States,* 393 F. Supp. 3d 1293, 1310 (CIT 2019) ("ABB's reliance on '{o}ther record facts' and justifications upon which Commerce did not rely, ABB's Resp. at 27-28, amount to 'post hoc rationalizations for agency action,' upon which the court cannot rely to sustain the agency's decision, *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 . . . (1962) (the court may only sustain the agency's decision 'on the same basis articulated in the order by the agency itself'))."

In sum, Commerce's decision in AR18/19 relied on its rationale in AR17/18. The Government and Nucor's attempt to distinguish Commerce's AR17/18 and AR18/19 rationale is a "'post hoc rationalization,' upon which the court cannot rely to sustain the agency's decision." *Id*.

**B. COMMERCE'S AFA DECISION IS CONTRARY TO JUDICIAL PRECEDENT**

In its initial Brief, Garg directed the Court's attention to five judicial decisions (in addition to *Garg I* and *II*) which supported its argument. Garg Br. at 24-27 (citing *Risen Energy Co. v. United States,* 611 F. Supp. 3d 1384, 1391 (CIT 2022); *Venus Wire Indus. Pvt. v. United States*, 471 F. Supp. 3d 1289, 1311 (CIT 2020); *Itochu Building Prods. Co. v. United States*, 2017 WL 2703810, *10-17 (CIT June 22, 2017), *aff'd on remand*, 2018 WL 1445676, *9-10 (CIT Mar. 22, 2018); *Canadian Solar Int'l Ltd. v. United States,* 378 F. Supp. 3d 1292, 1316-1322 (CIT 2019), *aff'd on remand*, 415 F. Supp. 3d 1326, 1332-35 (CIT 2019); *SolarWorld Ams., Inc. v. United States,* 234 F. Supp. 3d 1286, 1312 (CIT 2017)).

In its Response, the Government argues that two of these decisions – *Risen Energy* and *Venus Wire Industries* – could be distinguished from AR18/19. Gov. Br. at 23-25. Nucor focuses its case law analysis on "Garg's continued purchasing behavior" and then merely states that the decisions cited by Garg "do no more than reiterate the general legal framework that this Court outlined in *Garg I* and *Garg II*." Nucor Br. at 23. Nucor claims that Garg "fail{s} to point to any case-specific facts or reasoning of the courts in those proceedings that would require this Court to instruct Commerce to reach a different conclusion here." *Id*.

These arguments fail. The decisions cited by Garg establish that Commerce's AFA analyses have failed to establish certain essential preconditions to penalize a respondent because its unaffiliated vendors were unable or unwilling to submit confidential cost of production data to Commerce. In *Risen Energy*, this Court reasoned:

> Commerce failed to demonstrate that Risen and Trina did not put forth the maximum effort to provide full and complete responses to inquiries from Commerce. *Id.* Commerce also failed to demonstrate that Risen and Trina have leverage to induce their non-cooperative unaffiliated suppliers to cooperate, that the non-cooperative unaffiliated supplies are evading their own duties by

9

exporting subject merchandise through Risen or Trina, or that using the highest factor of production consumption rates on the record results in an accurate dumping margin.

611 F. Supp. 3d at 1391.

*Venus Wire* reasoned that "record evidence suggests that Venus's ability to induce cooperation from its largest supplier was unsupported by any need for that company to evade its own higher dumping margin." 471 F. Supp. 3d at 1311; *Itochu Building Products* explained that "Mid Continent's argument that Jinchi had sufficient control over its supplier simply because it had an ongoing business relationship with the supplier, . . . is unpersuasive. Under such a standard, it would be impossible to separate respondents who have control from those that do not." 2018 WL 1445676, *10. *Canadian Solar* reasoned that: Commerce "fail{ed} to explain why the alternative—here, using an average of reported usage rates—would not better promote accuracy."; and "Evidence of a potential stake in the respondent having a lower dumping margin does not demonstrate a threat of duty evasion here." 415 F. Supp. 3d at 1334-35 (emphasis added). *SolarWorld Americas* affirmed Commerce's decision to rely on neutral facts available for the missing data of a respondent's uncooperative tollers, noting that "Suntech documented its unsuccessful efforts to obtain the requested data from its tollers." 234 F. Supp. 3d at 1312.

While each of these decisions is based on a distinct administrative record, they are all based on the principle that Commerce's AFA decisions failed to consider critical factors required by law. Similar factors exist in this case. The AR18/19 record does not contain any evidence that Garg has leverage over [      ] or any evidence that [      ] has an incentive to evade duties by selling merchandise into the United States through Garg. In AR18/19 Garg advised Commerce:

> Garg Tube's supplier, [
>                              ], lacks prior experience, institutional capacity and business motivation (it has no direct exports to USA) to cooperate with Commerce's extensive cost data requirement.

10

> Applying AFA to Garg Tube won't have any direct adverse effect on supplier, since it does not have any direct business with the USA.
>
> Garg Tube has insufficient leverage over [            ].
>
> Garg Tube has provided all evidence of all of its communications with [            ].

Garg First Supplemental Questionnaire Response (Jan. 23, 2020), C.R. 36-46, P.R. 119-27, at 41.

Moreover, Garg expressly advised Commerce that it did not have sufficient market power to convince [   ] to provide the data request by Commerce. [   ] was one of many vendors selling subject merchandise to Garg, Garg self-produced significantly more subject merchandise than it purchased and [   ] does not itself export subject merchandise to the United States. Thus, there is no record evidence that Garg has sufficient market power to persuade [   ] to cooperate and no record evidence that [   ] has an incentive to evade duties by selling merchandise into the United States through Garg.

Moreover, in *Shanghai Tainai Bearing Co. v. United States*, decided September 14, 2023, this Court again rejected Commerce's application of AFA to an otherwise cooperative respondent merely because its unaffiliated vendor failed to submit cost data to Commerce. 658 F. Supp. 3d 1269, 1272 (CIT 2023). This Court initially discussed the Federal Circuit's rationale in *Mueller* that:

> Commerce may rely on such policies as part of a margin determination for a cooperating party like Mueller, *as long as the application of those policies is reasonable on the particular facts and the predominant interest in accuracy is properly taken into account as well.*"

*Id.* at 1283 (quoting *Mueller*, 753 F.3d at 1233) (emphasis in original). This Court reasoned:

> In sum, if Commerce has either (1) failed to consider evidence that reasonably detracts from the conclusion that Shanghai Tainai had sufficient control over its suppliers to force their cooperation by declining to do business with them; or (2) failed to properly take into account the predominant interest in accuracy — for

11

>  instance, by failing to carry out a case-specific analysis of its deterrence rationale or failing to take into account whether a cooperating party will be discouraged from future cooperation — then Commerce lacks substantial evidence to apply facts available with an adverse inference against a cooperating party on the basis of supplier non-cooperation. Here, Commerce failed to meet either standard.
>
>  "The concept of 'control,' as discussed in *Mueller*, does not require actual control. Instead, it requires Commerce to consider record evidence concerning the practical ability of a respondent to induce the supplier's cooperation."

*Id*. at 1284 (quoting *Venus Wire*, 471 F. Supp. 3d at 1309). This Court concluded:

>  If Commerce finds that it lacks substantial evidence to conclude that Shanghai Tainai was in a position to induce cooperation from its suppliers or that its methodology of selecting facts otherwise available with an adverse inference did not sufficiently prioritize accuracy over deterrence, Commerce should take new action to bring its Final Results into conformity with the Federal Circuit's mandates.

*Id*. at 1289. Commerce in response this year finalized its redetermination to not apply total AFA to Shanghai Tainai. *Shanghai Tainai Co. v. United States*, Court No. 22-00038, U.S. Department of Commerce, Final Results of Redetermination Pursuant to Court Remand (Jan. 12, 2024), ECF 58-1.

Commerce's AR18/19 decision fails the *Shanghai Tainai* analysis. The record does not contain substantial evidence that Garg was in a position to induce cooperation from [    ] or that Commerce's methodology sufficiently prioritized accuracy over deterrence. Thus, judicial precedent supports Garg's position in this case.

### III. GARG EXHAUSTED ITS REMEDIES WITH RESPECT TO THE COHEN'S *d* METHODOLOGY

The question of whether Commerce may continue to rely on the Cohen's *d* test to determine whether there is" pattern of prices that differ significantly among purchasers, regions, or time periods" currently is pending before the Federal Circuit in *Stupp Corp. v. United States*, Appeal No. 23-1663 ("*Stupp CAFC Appeal*"). This appeal has been fully briefed and oral argument should be scheduled in the near future. *Stupp CAFC Appeal* is a sequel to the earlier

12

Federal Circuit ruling, *Stupp Corp. v. United States,* 5 F.4th 1341, in which the Federal Circuit expressed "significant concerns relating to Commerce's application of the Cohen's *d* test in this case and, more generally, in adjudications in which the data groups being compared are small, are not normally distributed, and have disparate variances." *Id*. at 1357. In the *Stupp CAFC Appeal*, Appellant asks the Federal Circuit to conclude that the Cohen's *d* test is invalid as a matter of law:

> The first issue presented by the appellant is "{w}hether it is reasonable for Commerce to use a statistical test in a manner inconsistent with the limitations on the methodology described by the methodology's creator and relevant academic literature, and without any mathematical, logical, or empirical explanation why such a method may properly be used in the manner Commerce proposes."

*HiSteel Co. v. United States*, 653 F. Supp. 3d 1341, 1355 (CIT 2023) (quoting *Stupp CAFC Appeal*, Appellant Brief (July 5, 2023). The Government of Canada, in its *Stupp CAFC Appeal amici* Brief argues that:

> Commerce's Cohen's *d* test is not a reasonable test to identify significant difference between groups of prices, because it does not reliably measure what it purports to measure. Its outcomes are driven as much by the extent to which the groups that Commerce compares defy the assumptions as by the extent to which the prices in those groups differ.

*Stupp CAFC Appeal*, Brief of the Government of Canada *et al*. (Aug. 1, 2023) ECF 59, at 58.

Garg recognizes that in *Stupp Corp. v. United States*, this Court held that "Commerce's use of Cohen's test, when applied as a component of its differential pricing analysis, is reasonable." 619 F. Supp. 3d 1314, 1328 (CIT 2023). This Court presumably will reach the identical result in Garg's AR18/19 appeal for the identical reasons. Our presumption underscores the fact that Garg's Cohen's *d* challenge raises a question of law which, as discussed in Garg's initial brief, is a well-recognized exception to the exhaustion doctrine.

In this regard, the legality of Cohen's *d* ultimately will be resolved by the Federal Circuit. *See HiSteel,* 653 F. Supp. 3d at 1357 (reasoning that "{n}ew authority on the Cohen's *d* issue may be imminent in this case, and thus the court's decision to stay proceedings is warranted here.") The *Stupp CAFC Appeal* decision most likely will not be based on facts and circumstances unique to Stupp's appeal. *See, e.g.*, *Stupp*, 619 F. Supp. 3d at 1328 n.6. ("Stupp does not argue that it received an alternative method because its own combined sales inappropriately passed the Cohen's *d* test. Rather it offers a hypothetical to challenge the reasonableness of Commerce's methodology more generally.'")

As discussed in Garg's initial Brief, Garg raised the Cohen's *d* issue at the appropriate time, after Commerce relied on the Cohen's *d* test in the Draft Remand. Garg Br. at 32-35. By applying its differential pricing analysis to recalculate Garg's margin, Commerce made that action (the recalculation) subject to judicial review irrespective of whether it had earlier been challenged during the initial calculation of Garg's AR18/19 ADD rate.

Moreover, as also discussed in Garg's brief, the Cohen's *d* issue raised by Garg on remand falls squarely within well-recognized exceptions to the exhaustion doctrine. *See Papierfabrik Aug. Koehler AG v. United States,* 36 CIT 1632, 1635 (2012) ("Here, the intervening judicial decision exception applies because there was a change in the controlling law on the use of zeroing."); *Siemens Gamesa Renewable Energy v. United States*, 621 F. Supp. 3d 1337, 1348 (CIT 2023) ("the CAFC's opinion in *YC Rubber* interpreted a statutory provision, 19 U.S.C. § 1677f-1(c)(2), in a way that was directly contrary to the statutory interpretation Commerce applied in this case to limit its individual examination to a single respondent."); *Itochu Bldg. Prod. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013) ("The affirmatively stated basis for Commerce's ruling, moreover, together with Commerce's contemporaneous in-

court elaboration of its position on the issue, strongly suggests that a resubmission by Itochu would have been futile."); *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007) ("We conclude that the court below did not abuse its discretion in finding that Agro's argument regarding the proper interpretation of § 1675(a)(4) presents a "pure question of law" that can be addressed on appeal despite Agro's failure to raise such an argument in the proceedings before Commerce.")

Finally, these exceptions to exhaustion have been recognized in judicial decisions decided after July 31, 2023, the date on which Garg submitted its initial brief on the merits. *See Kisaan Die Tech Pvt. v. United States,* Court No. 21-00512, 2023 WL 8525595, *11 (CIT Dec. 8, 2023) ("Here, as in *Siemens Gamesa*, the all-others rate was a consequence of the Department's conducting the proceeding in violation of 19 U.S.C. § 1677f-1(c)(2).It also is pertinent to the issue of exhaustion of administrative remedies that *YC Rubber* was decided after the issuance of the Final Results. As *Siemens Gamesa* stated, "{c}ourts have long recognized 'intervening legal authority' as an exception to the exhaustion requirement.") (quoting *Siemens Gamesa*, 61 F. Supp. 3d at 1348); *Dalian Hualing Wood Co. v. United States*, Court No. 22-00334, 2023 WL 8714847, *3 (CIT Dec. 18, 2023) ("Thus, 'where the issue for the court is a 'pure question of law' that can be addressed without further factual development or further agency exercise of discretion,' as here, 'requiring exhaustion may serve no agency or judicial interest, may cause harm from delay,' and is often inappropriate.") (quoting *Itochu Bldg. Prods.*, 733 F.3d at 1145).

In sum, for the reasons discussed in Garg's initial Brief, and further summarized in this reply, this Court should hold that the exhaustion doctrine does not bar Garg's challenge to the Cohen's *d* test in this litigation.

PUBLIC VERSION

## IV.   CONCLUSION

For the foregoing reasons, Garg respectfully requests that this Court remand the *Final Results* and *Voluntary Remand* for reconsideration by Commerce.

Respectfully submitted,

 /s/ *Ned H. Marshak*
Ned H. Marshak
Dharmendra N. Choudhary
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP
599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
\*\*
1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Garg Tube Export LLP and Garg Tube Limited*

Dated: January 19, 2024

16

## CERTIFICATE OF COMPLIANCE

  Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Reply Brief, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word, is 4,869 word – less than the 7,000 word limit.

              /s/ *Jordan C. Kahn*
              *Counsel for Plaintiffs Garg Tube*
              *Export LLP and Garg Tube Limited*

Dated: January 19, 2024

12559525_1