Barcode:4591337-01 A-533-502 REM - Remand  -  Slip Op. 24-41

A-533-502
Remand – Slip Op. 24-41
POR:  05/01/2018 – 04/30/2019
~~Business Proprietary Document~~
**Public Version**
E&C/OI:  AH

***Garg Tube Export LLP and Garg Tube Limited v. United States*,**
**Court No. 21-00169, Slip Op. 24-41 (CIT April 8, 2024)**
**Welded Carbon Steel Standard Pipes and Tubes from India**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of
redetermination pursuant to the remand order of the United States Court of International Trade
(CIT) in *Garg Tube Export LLP and Garg Tube Limited v. United States*, Slip Op. 24-41 (CIT
April 8, 2024) (*Remand Order*).  These final results of redetermination concern the
administrative review of the antidumping duty order on welded carbon steel standard pipes and
tubes (pipe and tube) from India covering the period of review (POR) May 1, 2018, through
April 30, 2019.[1]  The respondents in the underlying review and plaintiffs in this litigation are
Garg Tube Export LLP and Garg Tube Limited (collectively, Garg Tube).

During the POR, Garg Tube purchased subject merchandise from several unaffiliated
suppliers.  In the underlying administrative review, Commerce requested cost of production
(COP) information for three of Garg Tube's unaffiliated suppliers of pipe and tube, in response
to which Garg Tube stated that each supplier refused to provide it with the requested COP
information.  We further requested the information directly from the three unaffiliated suppliers,

---

[1] *See Welded Carbon Steel Standard Pipes and Tubes from India:  Final Results of Antidumping Duty
Administrative Review; 2018-2019*, 86 FR 14872 (March 19, 2021) (*Final Results*), and accompanying Issues and
Decision Memorandum (IDM).

each of which refused to provide the requested information.[2]  In the absence of COP information

for the pipe and tube produced by these suppliers and purchased by Garg Tube, and relying upon

the U.S. Court of Appeals for Federal Circuit's (Federal Circuit) decision in *Mueller*,[3] Commerce

applied an adverse inference in selecting from among the facts otherwise available (AFA) to fill

the gap in the record (*i.e.*, the missing COP data of these suppliers).[4]  For the *Final Results*, as

partial AFA, Commerce used Garg Tube's reported production cost data for the product control

number with the highest calculated COP as the missing COP for the pipe and tube purchased

from the uncooperative suppliers.[5]

 Garg Tube challenged the *Final Results* and Commerce's application of partial AFA for

one of the three uncooperative unaffiliated suppliers, Company A (*i.e.*, [      ]).  In its *Remand

Order*, the CIT held that it was not reasonably discernable from Commerce's analysis in the

*Final Results* which statutory provision it was relying upon to apply partial AFA under section

776 of the Tariff Act of 1930, as amended (the Act).[6]  The CIT further held that to the extent that

Commerce relied on section 776(a) of the Act, Commerce must further support its determination

by addressing the *Mueller* factors, and to the extent Commerce relied on section 776(b) of the

Act, Commerce must explain why Garg Tube did not act to the best of its ability and do all that it

could to cooperate.[7]

 In these results of redetermination, Commerce clarifies that it is operating under section

776(a) of the Act in selecting among the facts available to determine the COP for the pipe and

tube acquired by Garg Tube from this unaffiliated supplier.  Moreover, as described below, we

---

[2] *Id.* at 37-38.
[3] *See Mueller Comercial de Mexico, S. de R.L. de C.V. v. United States*, 753 F.3d 1227 (Fed. Cir. 2014) (*Mueller*).
[4] *See Final Results* IDM at Comment 2.
[5] *Id.*
[6] *See Remand Order* at 12-14.
[7] *Id.* at 13-14.

find that we are unable to demonstrate on the record of this review that Garg Tube failed to cooperate to the best of its ability or that Garg Tube has sufficient market power or leverage over its uncooperative unaffiliated supplier to induce the supplier's cooperation. Therefore, under respectful protest, we modified our margin calculations for Garg Tube by relying on facts available, with no adverse inference, to fill the gap in the record on the unaffiliated supplier's COP information, which was caused by the unaffiliated supplier's non-cooperation.

## II.    REMANDED ISSUES

Pursuant to the CIT's *Remand Order*, and under respectful protest, for these final results of redetermination, Commerce recalculated the weighted-average dumping margin for Garg Tube by relying on the reported acquisition costs for pipe and tube that Garg Tube sourced from the unaffiliated, uncooperative supplier, [          ],[8] as a substitute for the supplier's missing COP information. In making this adjustment, we are no longer relying on adverse inferences pursuant to section 776(b) of the Act, with respect to Garg Tube or the uncooperative supplier, and are instead using facts available, pursuant to section 776(a) of the Act, to fill in the missing COP data in a manner consistent with *Mueller*.

### 1.    Legal Framework

Sections 776(a)(1) and 776(a)(2)(A)-(D) of the Act direct Commerce to use facts otherwise available in making the applicable determination if necessary information is not available on the record, or if an interested party (or any other person):  (1) withholds information that has been requested; (2) fails to provide such information by the deadline for submission of the information, or in the form and manner requested, subject to subsections (c)(1) and (e) of

---

[8] Garg Tube challenged the *Final Results* only with respect to Company A, [     ].  As such, Commerce is not reconsidering its application of partial AFA with respect to the other non-cooperative suppliers (*i.e.*, "Company B" [                    ] and "Company C" [                         ]) identified in the *Final Results*.

section 782 of the Act; (3) significantly impedes a proceeding; or (4) provides such information but the information cannot be verified as provided in section 782(i) of the Act.

Section 776(b) of the Act provides that, if Commerce finds that an interested party failed to cooperate by not acting to the best of its ability to comply with a request for information, Commerce may use an inference adverse to the interests of that party in selecting from among the facts otherwise available.  In so doing, Commerce is not required to determine, or make any adjustments to, a weighted-average dumping margin based on any assumptions about information an interested party would have provided if the interested party had complied with the request for information.[9]

The SAA explains that Commerce may employ an adverse inference "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."[10]  The purpose of an adverse inference is "to provide respondents with an incentive to cooperate" with Commerce's requests for information in a proceeding.[11]  Because Commerce lacks subpoena power, Commerce's ability to apply AFA is an important one.[12]

As described in more detail below, in *Mueller*, the Federal Circuit held that Commerce, in selecting from among facts available to calculate a cooperative respondent's weighted-average dumping margin, may consider an adverse inference against a non-cooperative supplier (who failed to report production costs used in calculating the respondent's weighted-average dumping margin) in certain circumstances.  The Federal Circuit in *Mueller* addressed a scenario wherein Commerce used an adverse inference to calculate the surrogate production cost in place of the

---

[9] *See* section 776(b)(1)(B) of the Act.
[10] *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA), at 870; *see also Certain Polyester Staple Fiber from Korea:  Final Results of the 2005-2006 Antidumping Duty Administrative Review*, 72 FR 69663, 69664 (December 10, 2007).
[11] *See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012).
[12] *Id.*

4

missing production cost for an uncooperative supplier and used the resulting surrogate cost in calculating the cooperative respondent's weighted-average dumping margin.[13]  Specifically, Commerce used the "three highest margin transactions" resulting from the available COP data submitted by one supplier, TUNA, as a surrogate for another supplier's missing data, Ternium, in calculating the weighted-average dumping margin for Mueller, the cooperating mandatory respondent.[14]  Although the Federal Circuit observed that Commerce was "acting primarily under subsection (a) {of section 776 of the Act} in setting a margin for Mueller," the Federal Circuit "conclude{d} that Commerce may rely on such policies {as deterrence and evasion considerations} as part of a margin determination for a cooperating party … as long as the application of those policies is reasonable on the particular facts and the predominant interest in accuracy is properly taken into account…"[15]

Therefore, in calculating the weighted-average dumping margin for a cooperative respondent, Commerce properly draws an adverse inference against a non-cooperative interested party to fill gaps in the record resulting from the non-cooperative party's failure to provide requested information, and Commerce may consider the gap-filling information as part of the margin calculations for a cooperative respondent.  In so doing, Commerce may rely on policies of deterring non-cooperation and duty evasion.  A remedy that collaterally impacts a cooperative mandatory respondent has the potential to account for evasion and encourage cooperation.

2.  <u>Background</u>

In the *Final Results*, Commerce found that partial AFA was warranted with respect to missing COP information from Companies A ([        ]), B, and C, which Commerce requested

---

[13] *See Mueller*, 753 F.3d at 1232.
[14] *Id.*
[15] *Id.*, 753 F.3d at 1233.

Case 1:21-cv-00169-CRK    Document 76-1    Filed 07/08/24    Page 6 of 22

Barcode:4591337-01 A-533-502 REM - Remand  -  Slip Op. 24-41

first from Garg Tube, and, subsequently directly from each supplier.[16]  In particular, Commerce

explained that these suppliers were producers of the subject merchandise and, as such, their

COP information was needed to calculate COP and constructed value.[17]  Commerce further

found that it was appropriate to apply facts available because the producers in question, *i.e.*, the

uncooperative, unaffiliated suppliers, withheld the necessary COP information, failed to provide

the information within the established deadline, and significantly impeded the review within the

meaning of sections 776(a)(2)(A)-(C) of the Act, and that as a result, necessary information was

missing from the record within the meaning of section 776(a)(1) of the Act.[18]  In selecting from

among the facts available, Commerce determined that an adverse inference was warranted

pursuant to section 776(b) of the Act because the producers in question failed to cooperate to

the best of their ability in providing the COP information.[19]

      Therefore, as partial AFA, Commerce calculated surrogate COPs in place of the missing

COP information based on Garg Tube's reported COP for the product control number with the

highest calculated COP.[20]  Commerce explained that this methodology comported with

"controlling judicial precedent" from the Federal Circuit in *Mueller* because it:  (1) potentially

induced the cooperation of Garg Tube's certain suppliers that had previously refused to

cooperate with Commerce's requests for COP information, and induced Garg Tube in the future

to source pipe and tube from suppliers who would cooperate and provide Commerce with their

COPs; and (2) was consistent with statutory and regulatory obligations to ensure an appropriate

result (*i.e.* relied upon data provided by Garg Tube)[21] while bearing in mind the need for

---

[16] *See Final Results* IDM at 37.
[17] *Id.*
[18] *Id.* at 38.
[19] *Id.*
[20] *Id.* at 42.
[21] *Id.* at 39.

Filed By: Allison Hollander, Filed Date: 7/8/24 11:10 AM, Submission Status: Submitted

inducement measures in situations where the same interested parties have continued to be uncooperative.[22]

As noted above, Commerce's application of partial AFA to Companies B and C is not part of the scope of this litigation, and, as such, Commerce continues to apply partial AFA to the missing COP information from Companies B and C. As to Commerce's finding regarding Garg Tube's ability to induce the cooperation of [      ], Commerce found that it was "reasonable to assume that Garg Tube maintained sufficient control" over [      ] because Garg Tube "sourced a substantial volume of pipe and tube for Garg Tube's export sales to the United States" from [      ], and [      ] did not itself export subject merchandise during the POR to the United States (meaning that its non-cooperation might deprive [      ] of access to a "lucrative market").[23]

Commerce further determined that Garg Tube "failed to put forth its maximum efforts in inducing {[      ]} to cooperate" by providing the requested COP information, insofar as Garg Tube "merely communicated to them, in a single instance, that their refusal to provide requested cost data could affect Garg Tube's business relationship with them."[24] In the previous administrative review, Commerce was unable to obtain the COP information pertaining to certain unaffiliated suppliers from both Garg Tube and the unaffiliated suppliers directly.[25] In the underlying administrative review, three unaffiliated suppliers, including [      ], again failed to cooperate with requests for information, and Commerce was again unable to obtain the

---

[22] *Id.* at 42.
[23] *Id.* at 40-41 (citing Memorandum, "Pipe and Tube U.S. Imports Data," dated July 19, 2019 (placing on the record U.S. Customs and Border Protection data on U.S. imports of pipe and tube during the POR)).
[24] *Id.* at 41.
[25] *Id.* at 41-42 (citing *Welded Carbon Steel Standard Pipes and Tubes from India:  Preliminary Results of Antidumping Duty Administrative Review; 2018-2019*, 85 FR 44860 (July 24, 2020), and accompanying Preliminary Decision Memorandum at 10-11).

necessary information from the suppliers or Garg Tube.[26]  Thus, Commerce found the application of partial AFA warranted given that Garg Tube continued to source from previously uncooperative suppliers.[27]

Garg Tube appealed Commerce's decision to apply partial AFA to [    ], arguing that it was not supported by substantial evidence and contrary to law.[28]

### 3. *Remand Order*

In its *Remand Order*, the CIT found that it was not reasonably discernible whether Commerce "applied {section 776(b) of the Act} against the unaffiliated supplier, against Garg Tube, or whether Commerce here acted pursuant to {section 776(a) of the Act}."[29]  The CIT remanded the *Final Results* for Commerce to explicitly state which statutory provision it relied upon and for further reconsideration or explanation.[30]  The CIT recognized that Commerce may in some instances use adverse inferences when calculating the weighted-average dumping margin for a cooperating respondent under section 776(a) of the Act.  Specifically, citing *Mueller*, the CIT noted that Commerce may incorporate adverse inferences against a cooperative respondent under section 776(a) of the Act if doing so will "yield an accurate rate, promote cooperation, and thwart duty evasion."[31]  The CIT further held that, Commerce may rely on inducement or evasion rationales where reasonable under the circumstances and where "predominant interest in accuracy is properly taken into account."[32]

---

[26] *Id.* at 37-38.
[27] *Id.* at 41-42.
[28] *See Remand Order* at 7.  Garg Tube did not challenge Commerce's use of a new methodology in calculation of an adverse inference to be applied to the facts available.
[29] *Id.* at 12 and 14.
[30] *Id.* at 14.
[31] *Id.* at 9 (citing *Canadian Solar Int'l Ltd. v. United States,* 415 F. Supp. 3d 1326, 1333 (Fed. Cir. 2019) (*Canadian Solar*); and *Mueller*, 753 F.3d at 1332-36).
[32] *Id.* at 10 (citing *Mueller*, 753 F.3d at 1233).

8

The CIT determined that, while Commerce cited *Mueller* as controlling judicial precedent in the *Final Results*, it was not reasonably discernable from Commerce's analysis how it was applying partial AFA under section 776 of the Act.  In particular, the CIT found that *Mueller* governs Commerce's incorporation of adverse inferences under section 776(a) of the Act, but the *Final Results* contained language suggesting that Commerce was operating under section 776(b) of the Act to determine the COP for the uncooperative supplier.  Specifically, the CIT noted that Commerce invoked the wording of section 776(b) of the Act when observing that Garg Tube "did not act to the best of its ability in attempting to obtain {[      ]'s} costs."[33]

In the *Remand Order*, the CIT held that, "{t}o the extent that Commerce relies upon {section 776(b) of the Act}, Commerce must also further support its determination."[34]  The CIT observed that neither Commerce's preliminary nor final results claim that Garg Tube should have been aware that they needed to compel its unaffiliated supplier to submit the information as a condition of conducting business, and instead its reasoning focuses on the degree of the efforts made by Garg Tube to compel supplier cooperation.[35]  On remand, the CIT directed Commerce to explain the basis for the determination that "Garg {Tube} did not act to the best of its ability and do all that it could to cooperate."[36]

Additionally, the CIT held that if Commerce relies upon section 776(a) of the Act, Commerce must also further support its determination by addressing the factors invoked by *Mueller*, including how applying an adverse inference will lead to an "accurate rate, promote cooperation, and thwart duty evasion."[37]  Specifically, the CIT held that Commerce should

---

[33] *Id.* at 11.
[34] *Id.* at 12.
[35] *Id.*
[36] *Id.* at 14.
[37] *Id.* at 13 (citing *Canadian Solar*, 415 F. Supp. 3d at 1333; and *Mueller*, 753 F.3d at 1232-36).

Barcode:4591337-01 A-533-502 REM - Remand  -  Slip Op. 24-41

explain the control exerted by Garg Tube over its supplier, and how the use of an adverse

inference promotes accuracy or thwarts duty evasion.[38]

On June 10, 2024, Commerce issued its Draft Results.[39] On June 17, 2024, Nucor

Tubular Products Inc. (Nucor) and Garg Tube submitted comments on the Draft Results.[40]

4. <u>Analysis</u>

In accordance with the CIT's *Remand Order*, we reconsidered our reliance on partial

AFA when determining the COP for [        ] and to calculate Garg Tube's weighted-average

dumping margin in the underlying review. As set forth below, we have reevaluated the record in

view of the CIT's *Remand Order* and determine not to apply an adverse inference with respect to

Garg Tube or the uncooperative supplier. That is, Commerce is applying partial facts available

to fill in the missing COP information and acting exclusively under section 776(a) of the Act. As

facts available, in these final results of redetermination, we determined the COP for [      ]

based on the reported acquisition costs for pipe and tube that Garg Tube sourced from this

supplier.

First, we find that application of partial AFA to Garg Tube is not supported under section

776(b) of the Act. Specifically, we determine that Garg Tube cooperated to the best of its ability

to comply with Commerce's requests for the COP information. Garg Tube made multiple

attempts to obtain cost information from the supplier via email, which included an offer to

[                                                    ].[41] When those attempts were unsuccessful, Garg Tube

---

[38] *Id.* at 14.
[39] *See* Draft Results of Redetermination Pursuant to Court Remand, *Garg Tube Export LLP and Garg Tube Limited v. United States*, Court No. 21-00169, Slip Op. 24-41 (CIT April 8, 2024), dated June 10, 2024 (Draft Results).
[40] *See* Nucor's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated June 17, 2024 (Nucor Draft Remand Comments); and Garg Tube's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated June 17, 2024 (Garg Tube Draft Remand Comments).
[41] *See* Garg Tube's Letter, "Garg Tube Section BCD Response to original questionnaire," dated January 23, 2020 (Garg Tube SQR1), at Exhibits S1-D-5(a), (b), and (c).

10

waived business proprietary treatment for its unaffiliated suppliers to allow Commerce to issue questionnaires directly to the suppliers.[42]  Garg Tube additionally communicated to the supplier that its refusal to provide the requested cost data could affect their business relationship.[43]

Second, we determine not to incorporate an adverse inference under section 776(a) of the Act.  As in the *Final Results*, Commerce finds (consistent with *Mueller*) that [      ] is an interested party within the meaning of section 771(9)(A) of the Act that withheld necessary information (*i.e.*, its actual COP data), failed to provide such information within the established deadline, and significantly impeded the review within the meaning of sections 776(a)(1) and (2)(A)-(C) of the Act.  We also continue to find that [      ] has failed to cooperate to the best of its ability in responding to our requests for information within the meaning of section 776(b) of the Act.

Due to [      ]'s non-cooperation, there is a gap in the record with respect to certain of Garg Tube's production costs (*i.e.*, Commerce must rely on section 776(a) of the Act to determine these missing data and to calculate Garg Tube's weighted-average dumping margin). The statute authorizes Commerce, in place of missing COP data needed to determine Garg Tube's weighted-average dumping margin, to consider an adverse inference against non-cooperative suppliers such as [      ] when selecting from among the facts otherwise available under section 776(a) of the Act.[44]  That is, notwithstanding Garg Tube's own cooperation, Commerce may rely on policy rationales of deterrence and evasion to calculate Garg Tube's

---

[42] *See* Memorandum, "Telephone Conversation with Mert Ermen Arkan," dated May 5, 2020 (Arkan Phone Call Memo).
[43] *See* Garg Tube SQR1 at Exhibits S1-D-5(a), (b), and (c).
[44] *See Mueller*, 753 F.3d at 1233-34.

11

Barcode:4591337-01 A-533-502 REM - Remand  -  Slip Op. 24-41

weighted-average dumping margin "as long as the application of those policies is reasonable on the particular facts and the predominant interest in accuracy is properly taken into account."[45]

Because we are acting under section 776(a) of the Act to determine the missing COP information for [      ], we next consider the CIT's holding that we "explain the control exerted by Garg {Tube} over its supplier as well as how the use of an adverse inference in selecting facts under {section 776(a) of the Act} promotes accuracy or thwarts duty evasion" to justify relying on partial AFA.[46]  We also note that the CIT cites its prior opinion in *Canadian Solar* in support of this finding, and that the CIT determined that evidence of the mandatory respondent's strong market presence, significant growth, and maintenance of supplier-specific accounts did not "reasonably indicate the presence of a long-term relationship creating leverage."[47]  In the *Remand Order*, the CIT noted that "*Mueller* specifically explains that an adverse inference based upon an inducement rationale where the respondent lacks control over the supplier is potentially unfair."[48]

We reviewed the record in light of the standard articulated by the CIT in its *Remand Order* and find that we are unable to identify substantial record evidence that the potential leverage exerted by Garg Tube over [      ] supports an adverse inference.  As the CIT highlights in the *Remand Order*, Garg Tube attempted on several occasions to secure [      ]'s cooperation and produced emails requesting [      ]'s response and threatening the future of the business relationship.  Notwithstanding these efforts, [      ] refused to cooperate with Commerce in the underlying administrative review.  Further, in the underlying administrative review, information on the record indicates that [    ] percent of Garg Tube's U.S. sales by

---

[45] *Id.*, 753 F.3d at 1233.
[46] *See Remand Order* at 14.
[47] *See Canadian Solar*, 415 F. Supp. 3d at 1334-35.
[48] *See Remand Order* at 13.

entered value were supplied by [      ].  While this demonstrates a significant business

relationship between Garg Tube and [      ], this evidence is no indication of Garg Tube's share

of [      ]'s domestic revenue, or whether [      ] has a strategic partnership with Garg Tube.

Because [      ] refused to cooperate in the underlying administrative review, Commerce could

not obtain complete information necessary to fully assess Garg Tube's ability to induce [      ]'s

cooperation (or [      ]'s possible motives in declining to provide the requested COP

information).  As such, we are limited in the conclusions that we can draw from the available

record evidence precisely because of the supplier's non-cooperation.  Therefore, based on the

record, we cannot find that Garg Tube was in a position in this review to induce the cooperation

of [      ].

        While Commerce has made this determination based on the record of the underlying

administrative review and the CIT's conclusions in the *Remand Order*, we are concerned with

certain implications of the CIT's opinion.  As discussed above, while the record demonstrates the

proportion of Garg Tube's sales supplied by [      ], when a respondent's supplier fails to

cooperate with a respondent's requests for information, it is difficult, if not impossible, for

Commerce to identify substantial evidence of the respondent's market power or leverage over

the supplier.  This is because the information necessary for such a determination will be in the

possession of the non-cooperating supplier.  Further, [      ] refused Commerce's direct request

for information, not just Garg Tube's request to [      ], and, thus, not only refused to cooperate

with the respondent, but refused to cooperate with Commerce's direct request to the supplier for

information necessary in an ongoing review.  Thus, [      ], a producer of subject merchandise

13

and "an interested party" to this proceeding pursuant to section 771(9)(A) of the Act and 19 CFR

351.102(b)(29)(i), "{withheld} information that has been requested by {Commerce}."[49]

We also find it troubling that the underlying administrative review is the second

administrative review wherein Commerce has individually examined Garg Tube and the second

time when unaffiliated suppliers of subject merchandise to Garg Tube, including [        ], have

refused to provide requested COP information.[50]  The record of the underlying review indicates a

notable reliance of Garg Tube on subject merchandise produced by the uncooperative

suppliers.[51]  A respondent's significant and continued use of non-cooperative suppliers

effectively provides a cloak of invisibility which may shield the suppliers unfair pricing behavior

for subject merchandise sold in the U.S. market.  Commerce believes that type of behavior could

provide a reasonable basis for Commerce to apply an adverse inference when calculating the

dumping margins for the respondent and assessing antidumping duties for the subject

merchandise produced by the uncooperative supplier, even if the respondent cooperates in

attempting to gain missing information from its uncooperative supplier.  However, herein, there

is no incentive for the respondent or the uncooperative suppliers to provide Commerce with the

requested information in order to derive accurate results of this administrative review.  To ensure

the accuracy in the calculation of Garg Tube's weighted-average dumping margin, and to deter

non-compliance and evasion which the unaffiliated supplier could be subject to an administrative

review and examined individually, Garg Tube could modify its business practices in order to

obtain complete COP information from its unaffiliated suppliers in any future segments of this

proceeding in which it is a respondent, including, but not limited to, securing the cooperation of

---

[49] *See* section 776(a)(2) of the Act.
[50] *See Final Results* IDM at 37-38.
[51] *See* Garg Tube's Letters, "Revised USA Sales Database," dated June 9, 2020; and "Revised HM Sales Database," dated June 9, 2020.

the unaffiliated suppliers, or obtaining the requested information at the time the respondent

agreed to purchase subject merchandise; removing the uncooperative suppliers from its list of

suppliers for failing to provide the requested information; or increasing the purchase of subject

merchandise from other (cooperative) suppliers.

## III.    INTERESTED PARTY COMMENTS

**Comment 1:     Commerce Should Continue to Apply Partial AFA**

The following is a verbatim summary of the argument submitted by Nucor.  For further details,

*see* the Nucor Draft Remand Comments at 3-10.

> {Commerce} has erred by no longer applying partial AFA to account for the missing cost information on the record.  {Commerce} should correct this error in the final determination and use partial AFA with respect to the missing cost data one of Garg's pipe suppliers.  The U.S. Court of International Trade's (CIT) opinion and remand order does not require {Commerce} to rely only on facts available (FA) without an adverse inference under {section 776(a) of the Act}.  Rather, the court permits {Commerce} to continue to apply partial AFA under {section 776(a) of the Act} as long as that determination is further supported, consistent with the *Mueller* framework.  The underlying administrative record supports such as {*sic*} a finding.  First, this is no longer the first review in which Garg {Tube} has failed to provide required cost data from its pipe suppliers, and the record shows that Garg {Tube} has leverage over these companies but is unwilling to use it.  Second, the facts of this {review}, when applied to the legal framework outline in *Garg I, Garg II*, and *Mueller*, show that the application of partial AFA is warranted.  And third, {Commerce}'s application of AFA to Garg {Tube} regarding the missing data from one of Garg {Tube}'s suppliers should not be viewed in isolation from the information missing from Garg {Tube}'s other suppliers.

**Commerce's Position:**  We disagree with Nucor that Commerce failed to properly consider

evidence of Garg Tube's substantial leverage over [        ].[52]  We continue to modify our margin

calculations for Garg Tube by relying on facts available, with no adverse inference, to fill the gap

in the record for the unaffiliated supplier's COP information.

---

[52] *See* Nucor Draft Remand Comments at 5.

First, Nucor notes that Commerce has requested the same cost information from Garg Tube and its suppliers in "multiple proceedings across multiple years," and that Garg Tube continues to do business with these uncooperative suppliers despite threats to their business relationship.[53]  Nucor argues that this means Garg Tube either makes empty threats or has leverage over the supplier "but are {sic} unwilling to use it."[54]

As described above, we reviewed the record evidence in light of the *Remand Order* that we "explain the control exerted by Garg Tube over its supplier" and found that, while there was evidence of a significant business relationship, with respect to [        ]'s share of Garg Tube's business, the record does not indicate Garg Tube's share of [        ] revenue or other details of their relationship which would demonstrate Garg Tube's leverage over the supplier.[55]  We agree with Nucor that the lack of cooperation from [        ] precludes Commerce from obtaining the necessary record evidence to establish leverage; however, the record does not support a finding that Garg Tube has leverage over [        ]. While this is the second administrative review wherein Garg Tube sourced subject merchandise from unaffiliated suppliers, including [        ], that subsequently failed to provide the requested information in the preceding review, we note that this second administrative review was initiated well before the issuance of the final results of the immediately preceding administrative review.[56]  Because the POR for the underlying review, May 1, 2018 - April 30, 2019, completely precedes the preliminary and final results of the of the prior review issued in July 2019 and January 2020 respectively, we are unable to conclude that Garg Tube:  (1) did not follow through on its threat to cease its business relationship with

---

[53] *Id.*
[54] *Id.* at 5-6.
[55] *See Remand Order* at 14.
[56] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 FR 33739 (July 15, 2019); and *Welded Carbon Steel Standard Pipes and Tubes from India: Final Results of Antidumping Duty Administrative Review; 2017-2018* 85 FR 2715 (January 16, 2020).

[       ]: or (2) continued to engage in business with [       ] after its refusal to provide COP information.[57]

Nucor further argues that the criteria outlined in *Mueller, Garg I* and *Garg II*[58] are satisfied by the record of the underlying administrative review.  Nucor states that in *Garg I "*the court asked {Commerce} to rebut the evidence provided by Garg {Tube} concerning its attempts to induce cooperation from its pipe suppliers," and that while Commerce could not do so then, in the underlying administrative review Commerce can now point to the fact that Garg Tube was aware that Commerce required cost information from its uncooperative pipe suppliers and continued to purchase from them.[59]  It is not clear whether "the evidence" Nucor references in the above quote refers to the volume of pipe and tube sourced from the supplier, or the evidence of the various actions taken by the respondent to induce cooperation.[60]  Regardless, we disagree that the legal criteria to apply an adverse inference are satisfied.  Following *Garg I*, Commerce was unable to find under the standard articulated by the Court, set out in *Mueller* and *Canadian Solar*, that Garg Tube's unsuccessful attempts to induce cooperation from its suppliers demonstrated that Garg Tube possessed the necessary leverage over its supplier.[61]  Nucor's argument that Garg Tube's advanced knowledge in the underlying administrative review that Commerce would require cost information from its pipe suppliers serves to demonstrate this leverage is unpersuasive.  As discussed above, Nucor points to no evidence that Garg Tube knew of [       ]'s lack of cooperation prior to engaging in business with [       ] during the POR for

---

[57] *See Welded Carbon Steel Standard Pipes and Tubes from India:  Preliminary Results of Antidumping Duty Administrative Review; 2017-2018*, 84 FR 33916 (July 16, 2019); *see also Welded Carbon Steel Standard Pipes and Tubes from India:  Final Results of Antidumping Duty Administrative Review*; 2017-2018, 85 FR 2715 (January 16, 2020).
[58] *See Garg Tube Export LLP v. United States*, 569 F. Supp. 3d 1202 (CIT 2022) (*Garg II*).
[59] *See* Nucor Draft Remand Comments at 8.
[60] *See Garg Tube Export LLP and Garg Tube Limited v. United States*, 527 F. Supp. 3d 1362 (CIT 2021) (*Garg I*).
[61] *See Garg Tube II*, 569 F. Supp. 3d at 1208-09.

17

the underlying administrative review.[62]  As explained above, the record lacks evidence of Garg

Tube's ability to exert control over [      ], despite Garg Tube's best efforts to obtain the COP

information.

　　　　Finally, we find Nucor's third argument that Commerce failed to consider the "broader

ramifications" that Garg Tube "was choosing to purchase pipe from multiple companies it

reasonably knew would not cooperate," which supports the use of partial AFA, unpersuasive.[63]

Commerce conducted a thorough review of the record as a whole to determine whether evidence

supported a finding that Garg Tube has leverage over [      ] to induce its cooperation with

Commerce's requests for information.  Garg Tube's business relationships with Companies B

and C, and their failures to cooperate with Commerce's requests for information, have no bearing

on Garg Tube's ability to induce cooperation over [      ], the supplier relevant to these final

results of redetermination.  Moreover, Nucor fails to explain how Garg Tube's business

relationship with the other suppliers following the preceding administrative review demonstrates

Garg Tube's ability to induce cooperation by [      ].  Nucor also points to no record

information demonstrating that because Garg Tube purchased inputs from other uncooperative

suppliers, it must have known that [      ] would be uncooperative to Commerce's requests for

information when Garg Tube purchased inputs from [      ].  As discussed above, we find the

record demonstrates that Garg Tube cooperated to the best of its ability in attempting to obtain

the missing COP information, which Nucor does not contest.[64]  Thus, pursuant with the *Remand*

---

[62] *See* Nucor Draft Remand Comments at 8.  Notably, after this administrative case and litigation, Garg Tube would
now be in a different position in engaging in business with [      ] in the future and could not claim to Commerce it
was unaware of that supplier's reluctance to cooperate in Commerce proceedings. When a respondent sources from
a supplier which it is aware will not participate in potential antidumping and countervailing duty proceedings, it
cannot later claim it has acted to the best of its ability when Commerce requests such data and that data is
unavailable.
[63] *Id.* at 9.
[64] *See* Garg Tube's Letter, "Garg Tube Section BCD Response to original questionnaire," dated January 23, 2020
(Garg Tube SQR1), at Exhibits S1-D-5(a)-(c); *see also* Arkan Phone Call Memo.

18

Barcode:4591337-01 A-533-502 REM - Remand - Slip Op. 24-41

*Order*, we continue to find that the record evidence supports the use of facts available without an adverse inference for [        ]'s COP information.

**Comment 2:        Commerce Should Not Protest the Final Remand Redetermination**

The following is a verbatim summary of the argument submitted by Garg Tube.  For further details, *see* the Garg Tube Draft Remand Comments at 2-3.

> {Commerce} properly recalculated Garg {Tube}'s dumping margin without applying {AFA} and instead by applying neutral facts available.  This result accords with judicial precedent in the instant AR18-19 appeal as well as the preceding appeal and the seminal {Federal Circuit} ruling on which both rulings were based.  Because {Commerce} has no legal basis to continue applying AFA, it should finalize this action without doing so under protest.

**Commerce's Position:**  We disagree with Garg Tube.  Despite supporting Commerce's application of facts available without an adverse inference in the Draft Results, Garg Tube criticizes the agency for making its decision under respectful protest.  Garg Tube's argument reflects the company's misunderstanding of the administrative process and insecurity in the appropriateness of the Court's opinion.  Put simply, the manner in which Commerce conducts its remand segment, including whether to issue its decision "under protest," is beyond the purview of interested parties, including Garg Tube.

We similarly disagree with Garg Tube's argument that because we could not provide a basis to apply AFA consistent with *Mueller* we cannot protest the *Remand Order* in the final remand redetermination.  As described above, due to the non-cooperation of the suppliers, the information which Commerce requires to fully assess the factors under *Mueller* is absent from the record, rather than in conflict with *Mueller*.  Accordingly, Commerce is precluded from addressing the uncooperativeness of Garg Tube's suppliers in this remand redetermination.

19

Barcode:4591337-01 A-533-502 REM - Remand  -  Slip Op. 24-41

**Comment 3:**      **Use of Differential Pricing**

The following is a verbatim summary of the argument submitted by Garg Tube.  For further details, *see* the Garg Tube Draft Remand Comments at 3-11.

> {Commerce} improperly recalculated Garg {Tube}'s dumping margin using its differential pricing analysis.  First, {Commerce} failed to show that Garg Tube's U.S. sale{ price}s satisfy the statutory criteria, as defined by {the Federal Circuit}, for applying the Cohen's *d* Test.  Second, {Commerce}'s method for determining the denominator in the Cohen's *d* test is unreasonable and unsupported by substantial evidence.

**Commerce's Position:**  We disagree with Garg Tube.  Commerce's differential pricing methodology remains unchanged from the *Preliminary Results* of the underlying administrative review.[65]  Garg Tube failed to raise differential pricing issues in its administrative case brief prior to the *Final Results* or in its challenge to the *Final Results* before this Court.[66]  As the Court already held in the *Remand Order*, Garg Tube did not raise a differential pricing issue in its administrative case brief and thus failed to exhaust its administrative remedies with respect to this issue.[67]  The Court held that none of the exceptions to an interested party's duty to exhaust applied, precluding judicial review of its challenge to Commerce's differential pricing methodology.[68]

---

[65] In the *Preliminary Results*, based on the results of the differential pricing analysis, we applied the average-to-transactions method to all U.S. sales to calculate the weighted-average dumping margin for Garg Tube because there was "a 25 percent relative change between the weighted-average dumping margin calculated using the average-to-average method and the weighted-average dumping margin calculated using an alternative comparison method based on applying the average-to-transaction method to all U.S. sales."  *See Certain Welded Carbon Steel Standard Pipes and Tubes from India:  Preliminary Results of Antidumping Duty Administrative Review; 2018-2019*, 85 FR 44860 (July 24, 2020) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum at 6.

[66] *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) (Generally, "arguments not raised in the opening brief are waived."); *see also Yantai Xinke Steel Structure Co., Ltd. v. United States*, Court No. 10-00240, Slip Op. 14-38 (CIT April 9, 2014), at 18 (finding that the "plaintiff waived its claim {} by failing to raise it before the court prior to the remand. Because plaintiff did not raise this issue until after remand, the court's instructions necessarily did not direct {Commerce} to reconsider {the issue}.").

[67] *See Remand Order* at 14-21; *see also* Garg Tube's Letter, "Garg Tube's Case Brief," dated December 7, 2020.

[68] *See Remand Order* at 18-21.

Moreover, Commerce finds that Garg Tube's comments regarding the differential pricing analysis are outside the specific scope of the *Remand Order*.  In the *Remand Order*, as discussed above, the Court remanded the *Final Results* to Commerce exclusively for further explanation or reconsideration with respect to its application of facts available to [     ]'s missing COP information.[69]  The Court did not direct Commerce to reconsider, further explain, or otherwise modify its differential pricing analysis, and Commerce has not done so.  Rather, the Court sustained Commerce's differential pricing analysis in the *Final Results* which is unchanged in these final results of redetermination.[70]  Accordingly, we decline to consider Garg Tube's arguments concerning the differential pricing analysis for the final results of this remand redetermination and continue to apply unchanged the differential pricing analysis from the *Final Results*.

## IV.     FINAL RESULTS OF REDETERMINATION

Based on the analysis and modifications described above, Garg Tube's recalculated weighted-average dumping margin for the POR is as follows:

| Exporter/Producer | Final Results of Review Weighted-Average Dumping Margin[71] (percent) | Final Results of Redetermination Weighted-Average Dumping Margin[72] (percent) |
|---|---|---|
| Garg Tube Export LLP; and Garg Tube Limited | 13.90 | 4.25 |

Should the Court affirm these final results of redetermination, Commerce intends to publish a notice of amended final results in the *Federal Register* and issue appropriate customs

---

[69] *Id.* at 14, 21.

[70] *Id.* at 21.

[71] *See Final Results*, 85 FR at 2716.

[72] *See* Memorandum, "Draft Results of Redetermination Calculation Memorandum for Garg Tube Export LLP and Garg Tube Limited," dated June 10, 2024.  The final remand margin remains unchanged from the draft remand redetermination.

instructions to U.S. Customs and Border Protection, consistent with these final results of

redetermination.

 Recoverable Signature

X 

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia
Deputy Assistant Secretary
 for Enforcement and Compliance