UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY

|  |  |  |
|---|---|---|
| GARG TUBE EXPORT LLP and GARG TUBE LIMITED, | : : : : | |
| Plaintiffs, | : : | Court No. 21-00169 |
| v. | : : | |
| UNITED STATES, | : : | |
| Defendant, | : : | |
| and | : : | |
| NUCOR TUBULAR PRODUCTS INC. and WHEATLAND TUBE, | : : : | |
| Defendant-Intervenors. | : : | |

**PLAINTIFFS' COMMENTS ON COMMERCE'S SECOND REMAND REDETERMINATION**

Ned H. Marshak
Dharmendra N. Choudhary*
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
**
*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Garg Tube
Export LLP and Garg Tube Limited*

Dated: August 7, 2024

**TABLE OF CONTENTS**

I. STANDARD OF REVIEW ................................................................................................ 1

II. COMMERCE PROPERLY RECALCLULATED GARG'S ADD RATE WITHOUT AFA 2

III. COMMERCE IMPROPERLY RECLAUCLATED GARG'S ADD RATE USING DIFFERENTIAL PRICING METHODOLOGY ................................................................ 2

   A. GARG'S CHALLENGE IS NOT BARRED BY EXHAUSTION ................................... 3

   B. COMMERCE FAILED TO SHOW THAT GARG'S U.S. SALES SATISFY THE STATUTORY CRITERIA FOR APPLYING THE COHEN'S *d* TEST ........................... 5

   C. COMMERCE UNLAWFULLY DETERMINED THE DENOMINATOR IN THE COHEN'S *d* TEST ................................................................................................ 9

CONCLUSION ............................................................................................................................ 11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apex Frozen Foods Pvt. Ltd. v. United States*,
  862 F.3d 1337 (Fed. Cir. 2017)..................................................................................................4

*Chevron, U.S.A., Inc. v. NRDC, Inc*,
  467 U.S. 837 (1984)...............................................................................................................1, 3, 4

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938)......................................................................................................................1

*Dillinger France S.A. v. United States*,
  981 F.3d 1318 (Fed. Cir. 2020).....................................................................................................4

*Garg Tube Export LLP v. United States*,
  527 F.Supp.3d 1362 (CIT 2021)...................................................................................................2

*Garg Tube Export LLP v. United States*,
  569 F.Supp.3d 1202 (CIT 2022)...................................................................................................2

*Garg Tube Export LLP v. United States*,
  638 F.Supp.3d 1230 (CIT 2024)...........................................................................................1, 2, 3

*Loper Bright Enterprises v. Raimondo*,
  144 S.Ct. 2244 (June 28, 2024)............................................................................................1, 2, 3, 4

*Marmen Inc. v. United States*,
  627 F.Supp.3d 1312 (CIT 2023)...................................................................................................8

*Mid Continent Steel & Wire, Inc. v. United States*,
  31 F.4th 1367 (Fed. Cir. 2022) ................................................................................................9, 10

*Mid Continent Steel & Wire, Inc. v. United States*,
  628 F.Supp.3d 1316 (CIT 2023).................................................................................................10

*Mittal Steel Point Lisas Ltd. v. United States*,
  548 F.3d 1375 (Fed. Cir. 2008).....................................................................................................5

*Mueller Commercial de Mexico, S. de R.L. de C.V. v. United States*,
  753 F.3d 1227 (Fed. Cir. 2014).....................................................................................................2

*Nakornthai Strip Mill Pub. Co. v. United States*,
  32 CIT 1272 (2008) .....................................................................................................................1

*Nexteel Co. v. United States*,
  28 F.4th 1226 (Fed. Cir. 2022) ...........................................................................................8

*Nexteel Co. v. United States*,
  633 F Supp.3d 1190 (CIT 2023) .........................................................................................8

*SeAH Steel Corp. v. United States*,
  619 F.Supp.3d 1309 (CIT 2023), *appeal dismissed in part,* No. 2023-1109,
  2023 WL 3244018 (Fed. Cir. May 4, 2023), *dismissed,* No. 2023-1657, 2023
  WL 3316548 (Fed. Cir. May 9, 2023) .................................................................................9

*Siemens Gamesa Renewable Energy v. United States*,
  621 F.Supp 3d 1337 (CIT 2023) .........................................................................................4

*Stupp Corp. v. United States*,
  5 F.4th 1341 (Fed. Cir. 2021) ..................................................................................... *passim*

*Stupp Corp. v. United States*,
  619 F.Supp.3d 1314 (CIT 2023) .........................................................................................6

**Statutes**

19 U.S.C. § 1516a ..................................................................................................................1

19 U.S.C. § 1677 ................................................................................................................3, 5

**Regulations**

19 C.F.R. § 351.414 ..............................................................................................................5

**Other Authorities**

J. Ching-Hong Li, *Effect size measures in a two-independent- samples case with
  nonnormal and nonhomogeneous data,* 48 Behavioral Research 1560 (2015). ................7

J. Cohen, *Statistical Power Analysis for the Behavioral Sciences* (2d ed. 1988) .................6

R. Grissom & J. Kim, *Effect Sizes for Research*: Univariate and Multivariate
  (2d ed. 2012) .......................................................................................................................7

Plaintiffs Garg Tube Export LLP and Garg Tube Limited (collectively, "Garg") submit comments on the Final Results of Redetermination Pursuant to Remand (July 8, 2024), ECF76-77, CRR10/PRR5 ("Second Remand"), filed by the U.S. Department of Commerce ("Commerce"), in response to *Garg v. United States*, 638 F.Supp.3d 1230 (CIT 2024), in the 2018-19 administrative review of the antidumping duty ("ADD") order on welded carbon steel pipes and tubes from India. The Second Remand when recalculating Garg's ADD rate: (1) properly did so without application of adverse facts available ("AFA"); and (2) improperly used differential pricing methodology.

I.      **STANDARD OF REVIEW**

"The court reviews remand determinations for compliance with the court's remand order." *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1274 (2008). This Court must hold unlawful remand redeterminations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938) .

The Supreme Court recently overruled *Chevron, U.S.A., Inc. v. NRDC, Inc*, 467 U.S. 837 (1984), which had directed courts to defer to reasonable interpretations of ambiguous statutes by administrative agencies. *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244, 1-2, 35 (June 28, 2024). *Loper* underscores the "solemn duty of the Judiciary" to interpret statutes and "say what the law is." *Id*. at 7-8 (internal quotations omitted). Further, *Loper* forecloses this Court from affirming Commerce's decision merely upon finding that the government's statutory interpretations are "reasonable," and for that reason alone, "must" affirm. *Id*. at 19, 23 (doubting whether an "otherwise-reasonable reading of a statute" could ever be "a clear misconstruction"). *Loper* clarified that it "makes no sense to speak of a 'permissible' interpretation that is not the

1

one the court, after applying all relevant interpretive tools, concludes is best. **In the business of statutory interpretation, if it is not the best, it is not permissible**." *Id*. at 23 (emphasis added).

## II.   COMMERCE PROPERLY RECALCLULATED GARG'S ADD RATE WITHOUT AFA

Commerce properly recalculated Garg's 2018-19 ADD rate without applying partial AFA for its uncooperative supplier. Second Remand at 5-19. This result complies with this Court's remand order, which invalidated such AFA application as unreasonable given record evidence and controlling judicial precedent. *Garg*, 638 F. Supp. 3d at 1326-29. This result complies with this Court's rulings in the preceding 2017-18 review where Commerce, on remand, likewise eliminated its unlawful partial AFA application for the same supplier—an outcome that is final, since it was not appealed to the U.S. Court of Appeals for the Federal Circuit ("CAFC"). *Garg v. United States*, 527 F.Supp.3d 1362, 1373-74 (CIT 2021); *Garg v. United States*, 569 F.Supp.3d 1202, 1221 (CIT 2022).

For reasons explained by Garg, previously by Commerce itself, there is no lawful basis to apply partial AFA in the 2018-19 review; doing so violates longstanding judicial precedent including the seminal CAFC decision, *Mueller Commercial de Mexico, S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1332-36 (Fed. Cir. 2014). Second Remand at 5-19; Memorandum of Law in Support of Plaintiffs' Motion for Judgment on the Agency Record and Comments on Commerce's Remand Redeterminaiton (July 31, 2023), ECF53-54 ("Garg Opening Br."), at 4-28. Accordingly, this Court should affirm Commerce's recalculation of Garg's ADD rate wihout AFA aplication.

## III.   COMMERCE IMPROPERLY RECLAUCLATED GARG'S ADD RATE USING DIFFERENTIAL PRICING METHODOLOGY

Commerce employed its differential pricing methodology in recalculating Garg's ADD rate. Commerce Memorandum (June 12, 2024), CRR2/PRR2, at 2. As shown below: (a) Garg's

differential pricing challenge is not barred by the exhaustion doctrine; (b) Garg's U.S. sales do not satisfy the statutory criteria which allows Commerce to apply an average-to-transaction ("A-T") instead of average-to-average ("A-A") methodology to calculate ADD margins; and (c) Commerce unlawfully determined the denominator in the Cohen's *d* test.

### A.  GARG'S CHALLENGE IS NOT BARRED BY EXHAUSTION

Commerce declined to address Garg's substantive challenge to the Cohen's *d* differential pricing analysis employed on remand: "Garg Tube did not raise a differential pricing issue in its administrative case brief and thus failed to exhaust its administrative remedies with respect to this issue." Second Remand at 20. We acknowledge that Commerce's decision conformed to this Court's order. *Garg Tube*, 638 F. Supp. 3d at 1238-42 ("Garg has failed to exhaust its administrative remedies with respect to its challenge to Commerce's differential pricing methodology.") However, that decision was issued before the Supreme Court, on June 28, 2024, in *Loper* expressly overturned *Chevron*. 144 S. Ct. at 2273 ("*Chevron* is overruled. . . . {C}ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

*Loper* constitutes an "intervening legal authority." It renders the exhaustion requirement inapplicable to certain reasons why Commerce, as a matter of law, cannot apply the Cohen's *d* test to determine whether Commerce is allowed to calculate Garg's ADD margin based on 19 U.S.C. § 1677f-1(d)(1)(B), by comparing "the weighted average of the respondent's sales prices in the home country to the respondent's individual sales prices in the United States." *Stupp Corp. v. United States*, 5 F.4th 1341, 1345 (Fed. Cir. 2021). In *Siemens Gamesa Renewable Energy v. United States*, this Court discussed this exhaustion exception:

> Courts long have recognized "intervening legal authority" as an exception to the exhaustion requirement. *See Hormel v. Helvering*, 312 U.S. 552 . . . (1941). Here, there has been an intervening judicial interpretation of existing law "which if

3

> applied might have materially altered the result." *Id.*, 312 U.S. at 558–59 . . . . {T}he CAFC's opinion in *YC Rubber* interpreted a statutory provision, 19 U.S.C. § 1677f-1(c)(2), in a way that was directly contrary to the statutory interpretation Commerce applied in this case to limit its individual examination to a single respondent.

621 F.Supp 3d 1337, 1348 (CIT 2023).

*Loper* constitutes intervening legal authority with respect to *Cohen's d* insofar as the CAFC has sanctioned Commerce's reliance on an A-T methodology because of the courts' conclusion that Commerce's analysis was reasonable. *See Dillinger France S.A. v. United States*, 981 F.3d 1318, 1325 (Fed. Cir. 2020) ("The statute is silent as to how Commerce must determine a 'pattern.' *See* 19 U.S.C. §§ 1677, 1677f-1. '{I} the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.' *Chevron* . . . , 467 U.S. 837, 843 . . . . We find that Commerce's interpretation of pattern was reasonable."); *Apex Frozen Foods Pvt. Ltd. v. United States*, 862 F.3d 1337, 1346 (Fed. Cir. 2017) ("We find Commerce's provided rationales in support of its meaningful difference analysis to be reasonable. Commerce's decision to preserve the maximum amount masked dumping by zeroing the negative A-A margin was a reasonable exercise of its delegated authority, to which we defer.").

Moreover, *Loper*'s rationale that "prior cases that relied on the *Chevron* framework," are still subject to statutory *stare decisis* despite {the Supreme Court's} change in interpretive methodology" does not apply here. Commerce's application of *Cohen's d* currently is pending before the CAFC in *Stupp Corp. v. United States*, No. 23-1663 (Fed. Cir. docketed Mar. 27, 2023). This appeal has been briefed and the court will be scheduling oral argument in the near future. Thus, since Commerce's continued reliance on Cohen's *d* is not subject to *stare decisis,* this Court should allow Garg to raise its challenge to Cohen's *d* at this time.

4

Finally, Garg respectfully disagrees with this Court's previous decision that it was otherwise required to have raised differential pricing in its case brief. This challenge was raised in comments on the draft remands after Commerce applied its differential pricing analysis, and Garg accordingly did "raise the issue **at the appropriate time on remand**" in order "to exhaust its administrative remedies before Commerce." *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1384 (Fed. Cir. 2008) (emphasis added). Further, the Cohen's *d* issue raised by Garg on remand falls squarely within recognized exceptions to the exhaustion doctrine for reasons already demonstrated, including the intervening CAFC precedent, *Stupp Corp. v. United States,* 5 F.4th 1341, 1351-52 (Fed. Cir. 2021). Garg Opening Br. at 32-35.

In sum, this Court should reconsider its rejection of Garg's differential pricing challenge and remand this issue for reconsideration for the reasons set forth below.

### B. COMMERCE FAILED TO SHOW THAT GARG'S U.S. SALES SATISFY THE STATUTORY CRITERIA FOR APPLYING THE COHEN'S *d* TEST

U.S. law prioritizes reliance on the A-A methodology, rather than average-to-transaction A-T to calculate ADD margins. 19 U.S.C. § 1677f-1(d)(1)(A); *see* 19 C.F.R. § 351.414(c)(1) ("the Secretary will use the {A-A} method *unless* the Secretary determines another method is appropriate in a particular case.") (emphasis added). Commerce may resort to the statutory exception and rely on A-T *only if* "there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time. . . ." 19 U.S.C. § 1677f-1(d)(1)(B).

In *Stupp*, the CAFC remanded for Commerce to reconsider its decision to rely on the Cohen's *d* test to determine whether a respondent has engaged in targeted dumping:

> {W}hile Commerce's decision to consider applying the a{A-T} method is within its discretionary power, its determination of whether the {A-T} method is appropriate in a particular case is not solely within its discretion, because that determination is confined by the statutory language of 19 U.S.C. § 1677f-

> 1(d)(1)(B): (i) there must be a 'pattern of export prices . . . that differ significantly among purchasers, regions, or periods of time,' and (ii) Commerce must 'explain{} why such differences cannot be taken into account' using the {A-A} method. . . . :
>
> We agree that there are significant concerns relating to Commerce's application of the Cohen's *d* test in this case and, more generally, in adjudications in which the data groups being compared are small, are not normally distributed, and have disparate variances."

*Id*. at 1351-52, 1356-57.[1]

*Stupp* held that in order for the Cohen's *d* test to reliably determine the "effect sizes" of the price comparisons, which Commerce uses to determine whether differences in prices are "significant", a dataset must fulfill three key preconditions. These preconditions are: (1) there must be an adequate number of observations on which the test is performed ("numerosity of data"); (2) the distribution of the data must be normal ("normality of distribution"); and (3) the variances of the test and comparison groups must be reasonably homogeneous ("homoscedasticity" or "homogeneity of variances"). Citing Professor Cohen, *Stupp* emphasized the importance of these three criteria: "'we maintain the assumption that the populations being compared are normal and with equal variability, and conceive them further as equally numerous.'" *Id*. at 1341, 1357 (Fed. Cir. 2021) (quoting J. Cohen, *Statistical Power Analysis for the Behavioral Sciences* (2d ed. 1988), at 21).

Regarding the *numerosity of data* criteria, *Stupp* held that "{t}he use of Cohen's *d* with test groups consisting of very few observations may be particularly problematic." *Id.* at 1358. Based on a hypothetical scenario in which the number of observations in the test group and comparison groups were small, *Stupp* found that "{t}he literature concludes that using Cohen's

---

[1] Garg acknowledges that upon review of Commerce's redetermination, this Court held that "Commerce has adequately explained how its methodology is reasonable." *Stupp Corp. v. United States,* 619 F.Supp.3d 1314, 1328 (CIT 2023).

6

*d* in such a situation {involving a small number of observations in those groups} may produce an upward bias in the calculated effect size." This, in turn, "might produce more 'passing' results under the Cohen's *d* test, *which would tend to exaggerate dumping margins*." *Id.* at 1359 (emphasis added).

Regarding the *normality of distribution* criteria, *Stupp* quoted from a treatise that explained that "'{w}hen the distribution of scores of a comparison population is not normal, the usual interpretation of a *d*G or *d* in terms of estimating the percentile standing of the average-scoring members of another group with respect to the supposed normal distribution of the comparison group's scores would be invalid.'" *Id.* (quoting R. Grissom & J. Kim, *Effect Sizes for Research*: *Univariate and Multivariate*, at 66 (2d ed. 2012)).  That treatise further explained that, because standard deviations—on which Commerce's Cohen's *d* test is based—"can be very sensitive to a distribution's shape, . . . *nonnormality can greatly influence the value of a standardized- mean-difference effect size and its estimate*." *Id.* (quoting Grissom & Kim at 66) (emphasis added).

Regarding the *homogeneity of variances* criteria, *Stupp* quoted from a study that "concluded that Cohen's *d* 'was found to be inaccurate when the normality and homogeneity-of- variances assumptions were violated . . . , *thereby severely affecting the accuracy of* d *in evaluating the true {effect size}* in the research literature.'" *Id.* at 1358 (quoting J. Ching-Hong Li, *Effect size measures in a two-independent- samples case with nonnormal and nonhomogeneous data*, 48 Behavioral Research 1560, 1571 (2015)).

*Stupp* also rejected the only two arguments presented by Commerce: (1) Commerce "need not . . . worry about normality, because it is not sampling data but instead possesses the entire universe of data"; and (2) "its approach is reasonable because it uses the larger, more

7

conservative 0.8 cutoff for identifying effect sizes that pass the Cohen's *d* test." *Id*. at 1359-60. With respect to Commerce's distinction between analyzing sampled data and an entire universe of data, the CAFC reasoned that although Commerce does not "sample" data, "that observation does not address the fact that Professor Cohen derived his interpretive cutoffs under the assumption{s} of normality . . . , homogeneity-of-variances and the number of observations being compared." *Id*. at 1360. With respect to Commerce's reliance on a 0.8 cutoff, the CAFC reasoned that this reliance "fails to address the fact that Professor Cohen derived his interpretive cutoffs under certain assumptions," and "{v}iolating those assumptions can {result in} a meaningless comparator." *Id.* at 1360.

In *Nexteel Co. v. United States*, the CAFC also found that Commerce's methodology was flawed "because Commerce's use of Cohen's *d* here presents identical concerns to those in *Stupp*." 28 F.4th 1226 (Fed. Cir. 2022). After Commerce issued its redetermination, this Court ordered another remand "for reconsideration or further discussion the issue of Commerce's calculation and application of the 0.8 threshold in Cohen's *d* analysis," and "for reconsideration of the academic literature cited in the Final IDM." *Nexteel Co. v. United States,* 633 F Supp.3d 1190, 1203 (CIT 2023).[2]

In sum, *Stupp* and *Nexteel* require that Commerce establish that the sales data underlying the test and comparison groups satisfy all three preconditions—numerosity of data, normality of

---

[2]  Garg acknowledges that in *Marmen Inc. v. United States*, 627 F.Supp.3d 1312, 1322 (CIT 2023), this Court held that "Commerce's use of the Cohen's *d* test applied as a component of its differential pricing analysis is in accordance with law." This Court reached a similar result in *SeAH Steel Corp. v. United States,* 619 F.Supp.3d 1309, 1313 (CIT 2023), *appeal dismissed in part,* No. 2023-1109, 2023 WL 3244018 (Fed. Cir. May 4, 2023), *dismissed,* No. 2023-1657, 2023 WL 3316548 (Fed. Cir. May 9, 2023) ("The concerns described in *Stupp* that might be raised when the Cohen's *d* test is applied to samples are inapplicable because in this case, Commerce applied the Cohen's *d* test to a population.")

distribution, and homogeneity of variances—before applying the Cohen's *d* test.

Commerce's cursory treatment of differential pricing methodology in the Remand is devoid of any analysis as to these threshold preconditions. This failure to examine the dataset means that Commerce's "targeted dumping" analysis would generate correct results only by happenstance—*i.e.*, only if the unexamined data are accidentally distributed in a way that satisfies the preconditions for the proper application of the Cohen's *d* test. As such, the Remand is flawed, because Commerce failed to analyze, much less demonstrate, whether Garg's pricing data satisfy the conditions for the Cohen's *d* test to be considered valid.

In sum, Commerce should not subject Garg's sales to the Cohen's *d* test without first analyzing the data to determine if the three linchpins of Cohen's *d* are satisfied. As Commerce's Remand did not conduct this analysis, and/or did not find that Cohen's *d* applies, Commerce must recalculate Garg's dumping margin based on A-A.

  **C. COMMERCE UNLAWFULLY DETERMINED THE DENOMINATOR IN THE COHEN'S *d* TEST**

A key element of Commerce's Cohen's *d* formula is the denominator—and in particular, its use of a simple average of the comparison group's and the test group's standard deviations (*i.e.*, σp in the denominator of the Cohen's *d* formula provided below):[3]

$$\frac{|M_c - M_t|}{\sigma p}$$

where $M_c$ = the mean of the comparison group;
    $M_t$ = the mean of the test group; and
    σp = the simple average of the two groups' standard deviations.

*Stupp*, 5 F.4th at 1346.

In *Mid Continent Steel & Wire, Inc. v. United States*, the CAFC explained:

---

[3] This term is also referred to as the "pooled standard deviation." *Mid Continent Steel & Wire, Inc. v. United States*, 31 F.4th 1367, 1377-81 (Fed. Cir. 2022).

> Commerce recognized that the function of the denominator in the Cohen's *d* coefficient is to be a "yardstick to gauge the significance of the difference of the means" of the sales prices of the test and comparison groups. . . The numerator of Cohen's *d* is the difference in weighted average sales prices between the test and comparison groups. Without further context, *i.e.*, without a basis for comparison, it is impossible to say whether that difference is "significant," under 19 U.S.C. § 1677f-1(d)(1)(B)(i) or otherwise.

31 F.4th 1367, 1377 (Fed. Cir. 2022).

In calculating the denominator (*i.e.*, the "yardstick"), however, Commerce's use of a simple average, as opposed to a weighted average, generates a distortive output and undermines the validity of Cohen's *d* test results. The CAFC reasoned:

> In implementing a statutory mandate, an agency is not duty-bound to follow published literature when, *e.g.*, the literature is inapplicable to the specific problem before the agency or is not itself well grounded. But here Commerce embraced the Cohen's *d* statistics measure and relied on the literature for that measure in making its statutory significance assessment . . . . In this situation, Commerce needs a reasonable justification for departing from what the acknowledged literature teaches about Cohen's *d*.

*Mid Continent*, 31 F.4th at 1381 (citation omitted).

Further, after evaluating Commerce's justifications, the CAFC rejected the "depart{ure}" from the statistical literature's "teachings about how to calculate the denominator of Cohen's *d*, specifically in deciding to use the simple averaging when the {test and comparison} groups differ in size," and found that Commerce's "explanations for doing so fail to meet the reasonableness threshold." *Id.* at 1381; *see Mid Continent Steel & Wire, Inc. v. United States*, 628 F.Supp.3d 1316, 1326 (CIT 2023) ("As the {CAFC} found in *Mid Continent V*, Commerce's claim that academia supports the simple average appears to be contradicted by the literature itself. If Commerce continues to rely on the academic literature to support its methodology, it must further explain why its choice of the simple average is reasonable in light of this inconsistency. The matter is remanded to Commerce . . . . ).

The same applies here. Commerce provided no explanation at all—much less, one that would justify its departure from the teachings in the statistical literature—regarding the calculation of the Cohen's *d* coefficient. Therefore, Commerce's Second Remand unlawfully declined to use, in the denominator for each Cohen's *d* calculation, either: (i) the standard deviation for the entire CONNUM-specific universe of U.S. sales; or (ii) the weighted average pooled standard deviations for the test and comparison groups of export sales.

## CONCLUSION

For the foregoing reasons, Garg respectfully requests that this Court with respect to Garg's recalculated ADD rate: (1) affirm the non-application of AFA; and (2) remand the differential pricing methodology.

Respectfully submitted,

*/s/ Ned H. Marshak*
Ned H. Marshak
Dharmendra N. Choudhary*
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP
599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
**
*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Garg Tube Export LLP and Garg Tube Limited*

Dated: August 7, 2024

11

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Memorandum of Law In Support of Rule 56.2 Motion, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word, is 3,334 words—less than the 10,000 word limit.

/s/ *Ned H. Marshak*

*Counsel for Plaintiffs Garg Tube Export LLP and Garg Tube Limited*

Dated: August 7, 2024

12867773_1